**John Reyes MATAMOROS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 71580.**

Court of Criminal Appeals of Texas, En Banc.

June 14, 1995.

establish the underlying felonies of burglary and robbery alleged in the indictment. A review of the facts is therefore in order.

Viewed in the light most favorable to the verdict, the evidence shows the following: Appellant and Eddie Goebel were neighbors. On the evening of July 18, 1990, as Goebel was approaching his home, appellant yelled at Goebel from a nearby balcony, saying that Appellant wanted money Goebel allegedly owed him "or else." Goebel continued on into his house without responding to appellant.

The next morning, after the time at which Goebel normally went to work, a neighbor noticed that Goebel's truck was still parked in front of his house. Seeing that the truck was still there at noon, and thinking that something might have happened to Goebel, she knocked on his bedroom window. No one replied.

At six p.m. on the same day, the police received a call from Larry Matamoros, appellant's younger brother, reporting a homicide. On the basis of the call, police went to Goebel's house. They found the front door locked and the back door open.

Upon entering the home, police discovered bloodstains on the floor and found Goebel dead in his bed. Blood splattered on the walls indicated that he was in bed at the time he was killed. He had twenty stab wounds and five cutting wounds, one of which was a five inch cut under his neck. The victim also had defensive wounds. The extent of his injuries indicated that he could not have walked around the house after being injured. Goebel was wearing only briefs and an undershirt, and although he always wore his glasses, they were found on the nightstand next to the bed. His wallet and keys were found on the dresser across the room and he was not wearing his watch. Further, although Goebel could not speak intelligibly without his false teeth, the teeth were not in his mouth when he was found.

Connie B. Williams, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Kimberly Aperauch Stelter and Steve Baldassano, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

*OPINION*

KELLER, Judge.

At a trial held in November 1992, a jury found appellant guilty of the capital murder of Eddie Goebel.[1] The jury answered the punishment issues affirmatively, and appellant was sentenced to death. Direct appeal to this Court is automatic under Article 37.071(h).[2] Appellant raises twelve points of error on appeal. We affirm.

### 1. *Sufficiency of the evidence*

#### a. Underlying offense

Appellant was indicted for committing murder, "while in the course of committing and attempting to commit the burglary of a habitation" and "while in the course of committing and attempting to commit ... robbery." Appellant does not challenge the sufficiency of the evidence to establish that he was the person who murdered Goebel. Instead, in points of error one and two, he argues that the State failed in its burden to

1. Tex.Penal Code § 19.03(a)(2) (1990) provides that a person commits capital murder when "the person intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, or arson."

2. All references to articles refer to the Texas Code of Criminal Procedure, 1990 edition, unless otherwise indicated.

Evidence is sufficient when, viewed in the light most favorable to the verdict, a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This court's duty is not to reweigh the evidence from reading a cold record but to "position itself as a final, due process safeguard ensuring only the rationality of the factfinder." *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim.App.1988).

In a capital murder prosecution the evidence need only be sufficient to establish one of the underlying felonies in the indictment. *Gunter v. State*, 858 S.W.2d 430, 439–440 (Tex.Crim.App.1993), *cert. denied*, — U.S. —, 114 S.Ct. 318, 126 L.Ed.2d 265 (1993) (burglary, robbery, kidnapping; evidence sufficient to show kidnapping). *Pinkerton v. State*, 660 S.W.2d 58, 62 (Tex.Crim. App.1983) (burglary and robbery; evidence sufficient to show burglary). Therefore, if the evidence in this case establishes burglary, we need not examine whether there was sufficient evidence to show robbery.

The jury was instructed that a person commits the offense of burglary "if, without the effective consent of the owner, he: … enters a habitation and commits or attempts to commit a felony or theft." In a capital murder prosecution, the requirement that a felony be committed is satisfied by the actual murder of the victim. *Fearance v. State*, 771 S.W.2d 486, 492–493 & 492 n. 1 (Tex.Crim. App.1988), *cert. denied*, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989). That requirement was met in this case. As to the absence of consent, the evidence is sufficient to establish that Goebel was sleeping in his bed when appellant entered the house without his victim's knowledge or consent and that appellant surprised and killed him. Points of error one and two are overruled.

### b. Future dangerousness

In point of error eight, appellant claims that the evidence is insufficient to support a "yes" answer to the punishment issue on future dangerousness.[3] To determine whether an affirmative answer to this issue is supported by the evidence, we must examine all of the evidence before the jury in the light most favorable to its finding and determine whether, based on that evidence, any rational jury could have found, beyond a reasonable doubt, that the answer to the second punishment issue was "yes." *Narvaiz v. State*, 840 S.W.2d 415, 425 (Tex.Crim. App.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993).

Appellant complains that the State presented no psychological evidence and that the only evidence of prior conduct involved minor skirmishes which did not seriously injure anyone. Psychological evidence is not a precondition for a "yes" answer on future dangerousness; evidence of a pattern of violent extraneous offenses can suffice. *Narvaiz*, 840 S.W.2d at 424–425. Moreover, we disagree with appellant's characterization of his prior conduct as "minor."

In the light most favorable to the verdict, the evidence shows that appellant has a prior record of serious as well as minor transgressions. The State presented evidence that appellant violently resisted arrest several times, on one occasion assaulted a police officer, and once stole a clipboard out of a police car. The officer who arrested appellant for the clipboard incident gave his opinion that appellant was violent and had no respect for the law. Some of these incidents led to appellant's guilty pleas to the offenses of assault and resisting arrest.

Far more telling, though, is an incident involving appellant and the woman who reported the clipboard incident. This woman testified that after she reported the theft, appellant broke into her home by kicking the door in and knocked her to the floor in the process. He then urinated on her. He attempted to sexually assault her, despite the fact that she was seven months pregnant at the time. The woman's four-year-old daughter was present and witnessed all that transpired. After failing in his attempt to sexu-

---

**3.** The issue, required by Art. 37.071(b)(2), asks: "whether there is a probability that the defendant would commit criminal acts of violence which would constitute a continuing threat to society."

ally assault the woman, appellant attempted to sexually assault the child. Based upon this incident, appellant pled guilty to the offense of burglary of a habitation with the intent to commit sexual assault.

Further, we have held that a prison record exhibiting violence is evidence that may be considered by a capital jury in support of a determination that the defendant poses a future danger to society, both inside and outside prison. *Chambers v. State*, 866 S.W.2d 9, 17 (Tex.Crim.App.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994). *Sterling v. State*, 830 S.W.2d 114, 120 (Tex.Crim.App.), *cert. denied*, — U.S. —, 113 S.Ct. 816, 121 L.Ed.2d 688 (1992). Appellant's prison record was violent. Taking the stand during punishment phase of the trial, he admitted to being a member of the "Mexican Mafia" and testified that a character test of the organization involved beating up fellow inmates for no reason. Appellant assaulted one inmate after making a false allegation that the person owed him money. He beat another inmate and punctured his eardrum. He threatened to kill still another prison inmate and that inmate's girlfriend.

Finally, appellant sexually assaulted his own two daughters. These assaults formed the basis of charges pending at the time appellant was convicted of the present offense.

In the offense at bar, appellant entered the victim's house at night and stabbed him to death as he lay in his bed. The attack was brutal, as appellant stabbed the victim at least twenty times in various places including the face, neck, chest, and arm. Appellant's history of violence includes attacking and threatening prison inmates, sexual assault of his own children, and assaulting a police officer. His attack on the pregnant woman and her daughter clearly reveals a temperament that is dangerously aberrant. Considering the evidence as a whole, we conclude that it is sufficient to support an affirmative answer to the future dangerousness issue. Point of error eight is overruled.

### 2. *Opening statement*

In point of error three, appellant complains about a remark made by the prosecutor during his opening statement. The prosecutor said,

I expect, further, all this will show beyond a reasonable doubt that the defendant is, in fact, guilty of capital murder. In addition, I expect the evidence will show that the defendant, himself, admitted the offense.

Appellant moved for a mistrial at the close of the State's case-in-chief. He argued then, and argues now on appeal, that the State failed to prove that appellant admitted the offense and, thus, he was entitled to a mistrial. He contends that the testimony showed that, at most, he admitted to killing an old man but never admitted to the offense of capital murder.

It is not error for a prosecutor to tell the jury in opening statement what he expects to prove, even if he does not later-offer such proof at trial. *Marini v. State*, 593 S.W.2d 709, 715 (Tex.Crim.App.1980). In the present case, though, the State did introduce evidence in support of the remark. A fellow prison inmate testified that appellant showed him a newsclipping discussing the murder of "the old man" and told the inmate, "[T]hat's what I am going to do to you." The State also introduced evidence of a conversation between appellant and his common law sister-in-law in which he denied responsibility for a particular family problem but admitted that "the old man" was a "different story." While appellant did not specifically admit all the elements of the crime with which he was charged, the testimony adduced during trial supports the prosecutor's statement that he expected the evidence to show that appellant admitted the offense. Point of error three is overruled.

### 3. *Admissibility of photographs*

In points of error four and five appellant alleges that the trial court improperly admitted photographs marked State's exhibits 22 through 37 and 76 through 79. Exhibits 22 through 37 depict the crime scene, showing bloody footprints and blood trails. Exhibits 76 through 79 show the victim's

body at the morgue before the autopsy. Appellant argues that the exhibits should have been excluded under Texas Rule of Criminal Evidence 403, as they were cumulative of previously presented evidence.[4]

At trial, Appellant objected to the admission of 22 through 37, as well as 76 and 78, claiming that the photographs were cumulative of the crime scene videotape made by police. He also argued that 76 and 78 were cumulative of other photographs. The trial court held that the photographs were admissible, finding that some were at different vantage points and angles from scenes depicted on the videotape, and other photographs were close-ups. Appellant specifically excepted exhibit numbers 77 and 79 from his objection at trial, so he has preserved error only as to exhibit numbers 22 through 37, number 76, and number 78.

■■■ A judge's ruling on a Rule 403 objection will be reversed only for a "clear abuse of discretion." *Montgomery v. State,* 810 S.W.2d 372, 392 (Tex.Crim.App.1990). So long as the trial court's ruling is within the zone of reasonable disagreement, it will be upheld.

Close-up photographs and photographs taken from different vantage points add to the jury's understanding of the condition of the crime scene. In this case, the photographs of the victim's body at the morgue after the wounds had been cleaned differ significantly from the videotape. The still photographs show the wounds more clearly, and show injuries that are not visible on the videotape. The morgue photographs add to the jury's understanding of the nature of the wounds involved. *See Emery v. State,* 881 S.W.2d 702, 710 (Tex.Crim.App.1994).

■■■ Further, a still photograph is not cumulative of a videotape. A videotape allows a jury an overall perspective that is simply not available from photographs. While still photographs offer an isolated and fixed content, a video recording allows a more panoramic representation of the physical and forensic evidence. *Gordon v. State,*

784 S.W.2d 410, 412 (Tex.Crim.App.1990). A photograph, on the other hand, permits a jury to examine a scene in detail. The trial court did not abuse its discretion in admitting the photographs. Appellant's fourth and fifth points of error are overruled.

### 4. *Voir dire*

■■■ In point of error six, appellant complains of the trial court's decision to sustain the State's challenge for cause of venireman Kenneth Ray Duplechin. At voir dire the State argued that Duplechin was an equivocating and vacillating juror, and that he was mentally unqualified. The State claimed that Duplechin was "almost as unknown as if we hadn't spoken to him because his answers are vacillating." Appellant opposed the State's challenge. The trial court agreed with the State and granted the challenge for cause.

■■■ A trial court's decision to grant a challenge for cause is reversible only for an abuse of discretion. *Kemp v. State,* 846 S.W.2d 289, 301 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993). The need for deference to the trial court is especially great when the record demonstrates uncertainty in the venireman's responses. *Id.*

■■■ A trial court may disqualify a venireman when he has such "mental defect ... as to render him unfit for jury service ... and the court in its discretion is not satisfied that he is fit for jury service in that particular case." Art. 35.16(a)(5) (ellipses added). A venireman's inability to comprehend the limited function of a juror at the punishment phase of a capital case may constitute "such ... mental defect ... as to render him unfit for jury service ..." *Gardner v. State,* 730 S.W.2d 675, 695 (Tex.Crim. App.) *cert. denied,* 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987). Such a mental defect may be present where a venireman's responses show an inability to understand the jury's role in capital proceedings. *Id.* One sign of this condition may be the court's

---

**4.** Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair preju-

dice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

inability to determine the venireman's views for the purpose of deciding other possible grounds of disqualification (e.g. *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985)). *Gardner,* 730 S.W.2d at 695.

In the present case, the attorneys and the trial court engaged in what the trial court described as an "exhaustive" voir dire of Duplechin.[5] During voir dire the court expressed concern about Duplechin's ability to grasp abstracts. She noted that he had changed his answers to questions regarding whether there is a difference between "intentional" and "deliberate," had defined "premeditated" antithetically to its actual meaning, and had, in the end, failed to understand that the consequences of the answers to the special issues were "death" or "life" rather than "guilty" or "not guilty." The court pointed out that Duplechin's answers changed depending upon who was questioning him. The trial court perceived in him an eagerness to please the questioner.

The record supports the trial court's perception of this venireman. He vacillated in his answers on the question of whether "intentional" and "deliberate" differ, on whether he would hold the State to a higher standard of proof than "beyond a reasonable doubt," and on whether he would require premeditation to answer "yes" to special issue one. His responses showed great uncertainty; his answers to various questions changed depending upon who asked the question. He wavered between wanting to sit on the jury and not wanting to participate. In fact, he acknowledged that he was confused and that his answers to questions varied depending upon who was questioning him.

After examining the entire voir dire of this venireman, we conclude that the trial court's decision to excuse Duplechin was not an abuse of discretion. Point of error six is overruled.

### 5. *Jury instructions*

In point of error seven, appellant contends that the trial court erroneously excluded his requested DNA instruction from the charge. Appellant requested that the jury be instructed that the mere admission of DNA evidence does not mean that the court vouches for its reliability or that the results should be accepted as proof beyond a reasonable doubt.[6]

Even a seemingly neutral instruction about a particular type of evidence constitutes an impermissible comment on the weight of the evidence in violation of Art. 36.14 because such an instruction singles out a particular piece of evidence for special attention. *Zani v. State,* 758 S.W.2d 233, 245 (Tex.Crim.App.1988) (evidence derived from hypnosis). *Florio v. State,* 532 S.W.2d 614, 618 (Tex.Crim.App.1976) (expert testimony).

Although we have not addressed the specific question of the propriety of a DNA instruction, the Fourteenth Court of Appeals considered the issue in *Bethune v. State,* 821 S.W.2d 222, 226 (Tex.App.—Houston [14th Dist.1991], *affirmed,* 828 S.W.2d 14 (Tex. Crim.App.1992). Relying upon our decision in *Zani,* the Court of Appeals held that an instruction concerning the reliability of DNA evidence constitutes an impermissible comment on the weight of the evidence. We agree and so hold in this case. Point of error seven is overruled.

### 6. *Search warrant affidavit*

In point of error nine, Appellant contends that the probable cause affidavit supporting the warrant to obtain and test his

5. The individual voir dire of Duplechin encompassed eighty pages in the statement of facts and was the longest voir dire in the trial.

6. Appellant's written requested instruction is as follows:
During the trial of the case you have heard testimony concerning Forensic DNA Profiling Tests. Specifically, evidence was heard that the accuracy and reliability of Forensic DNA Profiling Tests were in dispute.

You are instructed that the mere fact that the state uses a Forensic DNA Profiling Test and that you were allowed to hear testimony about them does not equate to either this court's voucher as to their accuracy, reliability, or applicability or that their results ought to be accepted as proof beyond a reasonable doubt with regard to the accused.

blood was insufficient. At trial appellant objected to the introduction of blood taken pursuant to the warrant, claiming that the affidavit was insufficient because it was based primarily on the uncorroborated testimony of Larry Matamoros, who was a possible co-defendant.

A totality of the circumstances test is used when evaluating the question of probable cause to issue a warrant. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *Bower v. State,* 769 S.W.2d 887 (Tex.Crim.App.), *cert. denied,* 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989). We have held that when a probable cause affidavit specifies a named informant as supplying the information upon which probable cause is based, the affidavit is sufficient if it is sufficiently detailed to suggest direct knowledge on the informant's part. *Wilkerson v. State,* 726 S.W.2d 542, 545 (Tex. Crim.App.), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987).

The search warrant affidavit names Larry Matamoros, appellant's younger brother, as an informant. It states that Larry gave the police a written statement in which he said that appellant had confessed to killing Goebel and to cutting himself badly in the process. The affidavit also states that the police had observed appellant with a cut on his hand.

Larry Matamoros' statement that appellant had confessed to him shows direct knowledge of appellant's culpability justifying a warrant to test appellant's blood. Also, independent observation by police officers of the cut on appellant's hand corroborated the statement. As for the attempt to portray Larry as a co-defendant, there is no evidence in the record connecting him to the crime. Larry was never a suspect, and he cooperated with law enforcement officials during the investigation. Appellant testified during the punishment stage of the trial that a former inmate named Danny Castillo actually committed the murder [7] and never once implicated his brother or insinuated that he was

involved in the crime. Point of error nine is overruled.

### 7. *Constitutionality of the death penalty*

In points of error ten and eleven, appellant argues that Texas' statutory death penalty scheme is facially invalid under the United States Constitution, violating the Eighth Amendment, Due Process, and Equal Protection. Appellant also argues that the statute improperly allocates legislative power by permitting the prosecutor to seek or forego the death penalty. The facial validity of the Texas scheme under the United States Constitution has been upheld. *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). *Muniz v. State,* 851 S.W.2d 238, 257 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993). The involvement of prosecutorial discretion to seek the death penalty has also been upheld. *Cantu v. State,* 842 S.W.2d 667, 691–692 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993). Points of error ten and eleven are overruled.

### 8. *Motion for continuance*

In his twelfth and final point of error, appellant complains of the trial court's refusal to grant his first [8] motion for continuance. After the conclusion of the State's case-in-chief, appellant's attorney orally requested a continuance. As the basis for his motion, he noted that appellant wore a band-aid to cover a cut on his face. He asked that the trial be continued so that the cut could heal and appellant would look more presentable to the jury. Because the motion was not written and sworn, error has not been preserved for review. Art. 29.03 & 29.08. *Montoya v. State,* 810 S.W.2d 160, 176 (Tex.Crim. App.1989), *cert. denied* 502 U.S. 961, 112 S.Ct. 426, 116 L.Ed.2d 446 (1991).

Moreover, even if error had been preserved, a trial court's decision to refuse a continuance is reversible only for an abuse of discretion. *Smith v. State,* 721 S.W.2d 844, 850 (Tex.Crim.App.1986). Appellant re-

---

7. Law enforcement officials ran various checks in TDC records for a Daniel Castillo based upon the description given by appellant and were unable to find a match.

8. Near the end of the trial, appellant orally requested a four-hour continuance to permit investigators to run a TDC check on Danny Castillo. This continuance was granted.

quested and received an instruction to the jury to the effect that the band-aid was not evidence of any fact in the case and should not be considered by the jury in its deliberations. Under the circumstances, we do not believe that the trial court abused its discretion. Point of error twelve is overruled.

The judgment of the trial court is AFFIRMED.

CLINTON and OVERSTREET, JJ., concur in the result.

BAIRD, Judge, concurring.

In the early portions of the opinion, the majority refers to the deceased by name. However, the latter portions of the opinion refer to the deceased as "the victim." The latter references clearly establish that the majority's use of the deceased's name is gratuitous, unnecessary and, for the following reasons, improper.

The purpose of an appellate opinion is to resolve the case and controversy before the court, and to instruct the bench and bar on legal principles for future application. In so doing, a court should recite only the facts necessary and relevant to decide the case and instruction on the law. *See,* Ruggero J. Aldisert, *Opinion Writing,* 97 (West.1990); *and,* Joyce J. George, *Judicial Opinion Writing Handbook,* 103 (3d ed. 1993). Facts which are unnecessary or distracting should be excluded. George, at 103–104. Because the name of a crime victim is seldom necessary to our discussion of the merits of a case, the Court should refrain from referring to the victim by name. *See generally, Star–Telegram, Inc. v. Doe,* —— S.W.2d ——, ——–-—— [1995 WL 341575], slip op. pp. 6–7 (No. D–4578, Supreme Court of Texas, June 8, 1995) (The "private details about a ... victim or the victim's identity may be irrelevant when the details are not uniquely crucial to the case....").

More importantly, however, our constitution grants crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process." Tex. Const. art. I, § 30. Further, there is a general presumption under Texas law that the public has no legitimate interest in embarrassing facts about private citizens. *Star–Telegram,* —— S.W.2d at ——, slip op. pg. 6 (citing *Industrial Found. of the South v. Texas Indus. Accid. Bd.,* 540 S.W.2d 668, 682 (Tex.1976)). Because victimization by crime brings not only the trauma of the crime itself but humiliation and embarrassment, it is improper to further invade a crime victim's privacy by unnecessarily stating the victim's name in an opinion. *See, Knapp v. Martone,* 170 Ariz. 237, 823 P.2d 685, 686, n. 1 (1992). Referring to the names of crime victims typically serves only to further embarrass and traumatize victims and their families. *State v. Ramey,* 318 N.C. 457, 349 S.E.2d 566, 569, n. 1 (1986). Accordingly, as a matter of sensitivity and respect, courts should not refer by name to the victim of an offense unless it cannot be avoided because of the peculiar circumstances of the case. *Dinkins v. State,* 894 S.W.2d 330, 335, n. 2 (Tex.Cr.App.1995); *First v. State,* 846 S.W.2d 836, 837, n. 2 (Tex.Cr.App.1992); *State v. Kiles,* 175 Ariz. 358, 857 P.2d 1212, 1215, n. 2 (1993); *State v. Pearson,* 1992 WL 70547, 1, n. 1 (Tenn.Cr. App.1992) (unpublished) (practice of court is to avoid mentioning names of victims in sexual related crimes in order to protect victim's privacy interest); *State v. Shamsid–Deen,* 324 N.C. 437, 379 S.E.2d 842, 845, n. 1 (1989) (victims of sexual assault); *and, State v. McGautha,* 617 S.W.2d 554, 555, n. 2 (Mo.Ct. App.W.D.1981). *See also, Wilcox v. State,* 672 S.W.2d 12, 13, n. 1 (Tex.App.—Houston [14th] 1984); *and, People v. Brown,* 35 Cal. App.3d 317, 320, n. 2, 110 Cal.Rptr. 854, 856, n. 2 (Ca.Ct.App.2d Div.1973).

Believing the reference to the deceased by name in the instant case was improper, I will not join the opinion. With these comments, I join only in the judgment of the Court.