In The
Court of Appeals
For The
First District of Texas
____________
NO. 01-02-00584-CR
____________

BLAKE ALLEN THAIN, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 879844




MEMORANDUM OPINION
           Blake Allen Thain, appellant, was charged by indictment with the murder of
Kaci Fink. Appellant pled not guilty and a trial was held before a jury. The jury
found him guilty of murder, and assessed punishment at 65 years’ confinement. In
three points of error, appellant complains that the trial court abused its discretion in
denying his motion for continuance and in allowing the victim’s father to remain in
the courtroom in violation of the rule, and that appellant received ineffective
assistance of counsel. We affirm.
Background
          In October 2000, Crystal Davis was not doing well in school and was not
getting along with her mother, so she decided to move in with her boyfriend’s
parents, Larry and Tanis Fink. The Finks had four children, including Crystal’s
boyfriend, Ross, his younger sister, Kaci, and two younger twin boys, Ryan and Neal. 
Kaci was 17-years-old and was a junior at Ross Sterling High School in Baytown.
          Crystal knew appellant from school. Sometime after midnight on June 14,
2001, Crystal was playing on the computer when she received an instant message
from appellant. Appellant invited Crystal over for a drink. Although Kaci had never
met appellant, Crystal asked him if she could bring Kaci along. 
          It was approximately 2:00 a.m. when the girls climbed out of a window and
drove Ross’s car to appellant’s house. Appellant met Crystal and Kaci outside his
house. Crystal noticed a white Mercedes parked outside appellant’s house. The three
walked into appellant’s living room where the two girls met two guys nicknamed Jay
and June.


 Appellant suggested they all go in his bedroom because his mother was
asleep. Appellant’s bedroom had bunk beds, two closets, two televisions, and many
“Star Wars” figurines that were still in their packages and displayed on the wall. The
wallpaper image on appellant’s computer was a picture of appellant’s face. 
Appellant’s window had a large sign draped across the window that said “Lakewood
pimp.”
          Appellant gave the girls a bottle of hard lemonade to share. They watched
cartoons, including a “Dragon Ball Z” video, and talked for about an hour. They also
listened to music from a group called “Stain.”
          Eventually, Crystal and Kaci got up to leave. Appellant was walking them out
when he asked them to stop and he went back to his bedroom. After the girls had
walked outside and said goodbye, appellant asked Crystal to come back to his room. 
Crystal, Jay, and appellant went back to his bedroom. When Jay left, appellant asked
Crystal, “What’s up with your friend Kaci?” Crystal replied, “Well, she thinks you’re
cute, but she’s dating someone right now.” As Crystal tried to open the bedroom
door, appellant shut it and started kissing her. Crystal pushed on his chest and told
him, “No, I have a boyfriend and, you know I don’t want to do this.” As Crystal
turned to open the door again, appellant tapped on her shoulder and called her name. 
She turned around and saw that appellant was holding a silver handgun with a black
handle.
          Crystal got upset and said, “You’re joking.” Appellant replied, “Nope, this
isn’t a joke,” and motioned for Crystal to get on the bed or the chairs. Crystal became
more upset and said, “No, I’m not, I’m leaving, I’m leaving.” Appellant told her to
turn around and be quiet, but she opened the door and ran through the house to the
backdoor. As she got near one of the cars, appellant caught her from behind, put his
arms around her neck, and a gun to her head. Crystal fell and Kaci came up and
pushed appellant off of Crystal. Both girls rushed to their car. As Kaci opened the
door, appellant jumped in the backseat of the car and ordered the two girls to get
inside and drive. Crystal did not see appellant’s gun but she suspected that he might
still have it with him.
          Appellant ordered Crystal to turn on Mayhow Street but she refused because
she knew that it led to a deserted area. Crystal continued driving toward the Finks’
house. Appellant told Crystal to take him back home. Crystal told him that she
would drop him off at the end of Lakewood Drive, appellant’s neighborhood
entrance.
          As Crystal approached Lakewood on Bayway, she saw Jay’s white Mercedes
coming out of appellant’s neighborhood. Appellant told Crystal to flash the lights so
that he could get into the Mercedes. Crystal flashed the car lights and started slowing
down. Before Crystal had fully stopped, she heard the car door open and heard many
gunshots coming from inside her car. Appellant exited the car through the passenger
door and ran into a nearby open field toward the direction of his house.
          Crystal got out of the car and managed to get a driver of a pickup truck to stop. 
The driver of an 18-wheeler also stopped at the scene. Crystal went back to check on
Kaci and became hysterical when she saw Kaci covered in blood. The driver of the
18-wheeler called 9-1-1 and Kaci’s parents.
          Paramedic Sean Saunders, from the City of Baytown, arrived at the scene at
4:19 a.m. After he placed a heart monitor on Kaci’s body, he found no sign of any
electrical activity in her heart and concluded she was deceased. He noted that Kaci
had injuries inconsistent with life and decided not to work on her any further.
          Rene Hinojosa, from the Baytown Police Department, arrived on the scene
sometime after 4:09 a.m. He saw Kaci sitting in the car and observed blood coming
out of her ears, nose and mouth. He also noticed that the car was still running and
that the driver’s side window was shattered. Hinojosa saw Kaci’s parents walking up
to the car. When Kaci’s father asked why the paramedics were not treating his
daughter, Hinojosa told them that she was dead.
          Kaci sustained several bullet wounds. One bullet entered the back of her left
hand and exited near her index finger. Another one entered near her right ear,
fracturing her skull, went through her brain, and exited through the center of her
forehead. A third bullet entered on the right side of her back, piercing her right lung,
causing trauma to the aorta, and exited through her upper chest. A fourth bullet,
traveled through her right and left thighs respectively, exiting through her left calf.
          Five .380 caliber shell casings were found outside of the car and another one
was discovered inside on the center console. Two fired bullets were found among the
broken glass in the driver’s seat. Other bullets were recovered from the floorboard
and from the driver’s side door.
          Chris Felder, from the Baytown Police Department, went to appellant’s home
along with some other officers, including George Drude. Drude called appellant’s
phone but there was no answer. About 30 minutes later, Drude called appellant and
he answered. Drude identified himself and asked appellant to step outside, but
appellant refused, and wanted to know the charges.


 Drude called appellant again,
and appellant stated, “I know y’all are after me for something. So y’all can wait until
I get up. Y’all are on overtime.” This continued for three hours until appellant
eventually came out of his house and was arrested.
          Appellant’s house was searched the next day. Inside appellant’s bedroom was
a gun range target and a gun rack. There was a box of shell casings, including .38
caliber, .380 caliber, and .22 caliber shells, and a holster in appellant’s closet. A
“Dragon Ball Z”video was found in the VCR, and a compact disk of the group
“Stain” was found on top of the videotapes. There were four bottles of Boone’s Hard
Lemonade recovered from appellant’s bedroom; however, there were no usable
fingerprints on the bottles. The fired shell casings found in appellant’s bedroom and
the fired shell casings found at the murder scene were all fired from the same gun.
Discussion
Motion for Continuance
          In his first point of error, appellant claims that the trial court abused its
discretion in failing to grant appellant’s motion for continuance. This case was
originally set for trial on February 18, 2002. Sometime before trial, appellant
requested a reset because he wanted to get some DNA testing done on the lemonade
bottles discovered in his room. By agreement of the parties, the trial court reset the
case for trial on April 29, 2002.
          On April 12, 2002, appellant filed a motion for continuance claiming that the
DNA results obtained by the State were inconclusive. Based on this assertion,
appellant wanted to have the DNA tested by an independent lab of his choosing and
at his expense. Appellant requested a continuance until May 13, 2002, which was not
ruled on by the court.
          On May 1, 2002, the first day of trial, appellant approached the bench and
re-urged his motion for continuance because the results of his independent DNA
testing were not available.


 The court stated that, instead of resetting the case a
second time, it would be willing to have a recess if the circumstances required it.
          Standard of Review
          A trial court’s decision to refuse a continuance is reversible only for an abuse
of discretion. Matamoros v. State, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995). A
conviction should not be reversed for failure to grant a continuance unless the record
shows that the evidence sought to be secured by the delay was material to the case
and that appellant was prejudiced by the inability to produce it. Leach v. State, 548
S.W.2d 383, 384-85 (Tex. Crim. App. 1977).
          Although trial had been reset to begin on April 29, 2002, appellant requested
that his trial be reset another 14 days because the results of his independent DNA
testing were not ready. At appellant’s request, a prior continuance of two-and-a-half
months had already been granted to secure DNA testing.


 Two of the four lemonade
bottles that were tested showed only the appellant as a contributor. The issue of
whether Crystal’s or Kaci’s DNA was detected on the other two lemonade bottles was
collateral.


 Whether the girls were in appellant’s room was not an issue the jury was
required to resolve. The shooting did not occur in appellant’s bedroom. Moreover,
there was ballistics-expert testimony to link appellant to the shooting, namely, the
matching shell casings at the murder scene and in appellant’s bedroom.
          Additionally, Crystal testified that she had been in appellant’s bedroom. 
Crystal testified that she remembered the “Dragon Z Ball” video, the “Stain” compact
disk, and lemonade bottles, all of which were found in appellant’s bedroom. Also,
Jay and June, who were also at appellant’s house on that day, testified that Crystal
and Kaci had been at appellant’s house that night. In light of the other evidence, we
hold that the court did not abuse its discretion in denying appellant’s motion for
continuance. We overrule appellant’s first point of error.
Ineffective Assistance of Counsel
          In his second point of error, appellant claims that he received ineffective
assistance of counsel because counsel failed to conduct an independent analysis of
the DNA evidence and have the results ready for trial. Appellant claims that trial
counsel’s failure to aggressively pursue and obtain the DNA analysis pretrial was
prejudicial. Appellant claims that such failure prevented him from testifying that
Crystal Davis and Kaci Fink were not at his house prior to the murder, and denying
that he was responsible for the murder.
          Standard of Review
          The standard of review for evaluating claims of ineffective assistance of
counsel is set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052,
2064 (1984). See Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999);
Hernandez v. State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986); Gamble v. State, 916
S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). Appellant must show
that (1) counsel’s performance was so deficient that he was not functioning as
acceptable counsel under the sixth amendment, and (2) but for the counsel’s error, the
result of the proceedings would have been different. Strickland, 466 U.S. at 687, 104
S. Ct. at 2064; Thompson, 9 S.W.3d at 812; Gamble, 916 S.W.2d at 93. 
          It is the defendant’s burden to prove ineffective assistance of counsel. 
Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Gamble, 916 S.W.2d at 93. 
Defendant must overcome the presumption that, under the circumstances, the
challenged action might be considered sound trial strategy. Strickland, 466 U.S. at
689, 104 S. Ct. at 2065; Thompson, 9 S.W.3d at 813; Gamble, 916 S.W.2d at 93. 
          The record shows that the trial court reset appellant’s trial date to April 29,
2002. The State’s DNA results for all four bottles were disclosed on April 11, 2002.
Appellant’s counsel filed a written motion for continuance claiming that the DNA
results received from the State contradicted appellant’s video statement and requested
that appellant be allowed to conduct his own DNA testing. The trial court did not
grant appellant’s motion for continuance but allowed appellant to conduct his own
independent DNA analysis. However, during appellant’s motion for new trial
hearing, appellant’s counsel testified that he did not anticipate that the independent
testing would result in inconsistent findings. Appellant’s counsel testified that the
testing was done as an abundance of caution.
          Furthermore, whether or not Kaci and Crystal had been in appellant’s bedroom
was not a key issue in the case. The record reflects that the State had enough
evidence, besides the DNA test results, to establish that Kaci and Crystal had been in
appellant’s bedroom.


 Crystal testified in great detail about the description of
appellant’s room, which was corroborated by the physical evidence seized from
appellant’s bedroom.
          We hold that appellant did not overcome the presumption that his trial counsel
was effective. We overrule appellant’s second point of error.
Violation of The Rule
          In his third point of error, appellant claims that the court abused its discretion
by allowing Kaci’s father to remain in the courtroom in violation of “the rule” under
the Texas Code of Criminal Procedure article 36.03.



          On May 1, 2002, the State filed a “motion to exempt family members of victim,
Kaci Fink, from the exclusion of witnesses’ rule 614 of the rules of evidence.” The
State informed the court that Kaci’s father would be the only one testifying and that
his testimony would not be materially affected by hearing others testify in this case.
          Mr. Fink testified that he heard the computer modem boot up at about 12:35,



that he saw Crystal sitting at the computer, and that he went back to bed. He stated
that the next thing he remembered was getting a call from a truck driver telling him
that Kaci had been shot. Mr. Fink did not mention anything about Crystal receiving
an e-mail or instant message. Furthermore, Crystal did not testify about the exact
time that she logged on the computer except that it was sometime after midnight. The
only corroboration given by Mr. Fink was concerning a fact that had already been
confirmed by AOL’s records and testimony. We hold that Mr. Fink’s testimony was
not materially affected by remaining in the courtroom. We overrule appellant’s third
point of error.
 
 
 
 
 
 
Conclusion
          We affirm the trial court’s judgment.
 
                                                                        Laura C. Higley
                                                                        Justice

Panel consists of Chief Justice Radack and Justices Alcala and Higley.
Do not publish. Tex. R. App. P. 47.