*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# MEMORANDUM OPINION

No. 04-11-00292-CR

Glen **DENSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2008CR8084
Honorable Philip A. Kazen, Jr., Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
           Sandee Bryan Marion, Justice
           Phylis J. Speedlin, Justice

Delivered and Filed:  July 25, 2012

AFFIRMED

Glen Denson was convicted by a jury of capital murder. On appeal, Denson contends the trial court erred in admitting testimony regarding statements made by one of the victims to three people in violation of the Confrontation Clause and in admitting a crime scene video because its prejudicial effect substantially outweighed its probative value. We affirm the trial court's judgment.

**CONFRONTATION CLAUSE**

In his first issue, Denson complains that the trial court erred in admitting statements made by one of the victims, his wife, to two witnesses who discovered her body on a sidewalk and to the first officer to arrive on the scene. Denson contends the admission of the testimony violated his right to confrontation. The State responds that the testimony was properly admitted under numerous theories. We hold the testimony was properly admissible as a dying declaration.

Around 4:00 a.m., Rusty Banner found Sharon Denson lying on the sidewalk. As Banner approached Sharon, he observed chunks of her skin coming off her body and part of her heel hanging off. Sharon's breathing was very shallow, and Banner called 911. Sharon was talking to Banner in a whisper and told him that the house across the street was on fire, and her husband "did it." Banner reminded Sharon several times to keep breathing and to stay awake.

Yvette Cheesebrew stopped a few minutes after Banner found Sharon. Cheesebrew asked Banner if Sharon was still alive, and Banner told Cheesebrew that she was still breathing. As Cheesebrew approached Sharon, she observed that Sharon's feet were burned and the skin was peeling off, and she looked smoky. Sharon's lips were dry, cracked, and blistery and appeared as if "they had like smoke damage on her face, lips." Sharon told Cheesebrew that her husband did this to her and had killed her boyfriend, Sidney Dees, in the house across the street. Sharon was concerned about her children, who she told Cheesebrew were 15 and 11 years old. Cheesebrew stated that she wrote down what Sharon told her because "if she didn't live, I wanted to make sure I knew as much about her."

Officer David Tillery arrived at the scene after the ambulance. Officer Tillery could smell gasoline and burnt flesh coming off Sharon. The EMS personnel called Officer Tillery over to show him that Sharon had several gunshot wounds in her upper torso, and Officer Tillery

observed that most of Sharon's body was burned. As EMS personnel were cutting away Sharon's clothing, Officer Tillery observed that parts of her skin were tearing away with her clothing. Officer Tillery was concerned with whether there were other victims or any suspects in the area. Sharon told Officer Tillery that her husband had shot her and her friend and then burned the house down.

While investigating the house across the street, Officer Tillery located Dees's body and discovered that the house was on fire. After the fire was extinguished, EMS personnel were able to enter and pronounced that Dees was deceased. Sharon was transported by air to the hospital where she died a week later as a result of complications from the gunshot wounds and injuries she suffered in the fire.

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Although hearsay is generally not admissible as evidence, dying declarations are admissible under an exception to the hearsay rule. TEX. R. EVID. 804(b)(2). A dying declaration is a "statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death." *Id*. The admission of dying declarations also does not infringe upon a criminal defendant's right of confrontation. *Giles v. California*, 554 U.S. 353, 358-59 (2008); *Gardner v. State*, 306 S.W.3d 274, 289 (Tex. Crim. App. 2009).

"[W]e defer to a trial court's determination of historical facts and credibility, [but] we review a constitutional legal ruling … *de novo*." *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006). A "trial judge has great discretion in deciding whether a statement qualifies as a dying declaration." *Gardner*, 306 S.W.3d at 291.

The proponent of a dying declaration is required to establish that the statement was made: (1) when the declarant was conscious of approaching death; (2) voluntarily; (3) without persuasion or influence from leading questions; and (4) when the declarant was of sound mind. *Gardner*, 306 S.W.3d at 289-90. This predicate may be established by either direct or circumstantial evidence, and it is not essential that the declarant actually say that she was conscious of impending death. *Id*. at 290. "Each case depends on its particular circumstances, but sometimes the declarant's conduct and the nature of his wounds [will] suffice." *Id*. "All that the rule requires is sufficient evidence, direct or circumstantial, that demonstrates that the declarant must have realized that he was at death's door at the time that he spoke." *Id*.

Denson contends that the dying declaration exception does not apply because: (1) Sharon's statements were not made with the belief that death was imminent; (2) Sharon's statements did not concern the cause and circumstances of her impending death but were made to express concern for her children; and (3) Sharon was not of sound mind when she made the statements. As previously noted, evidence that Sharon realized that she was at death's door may be direct or circumstantial. In this case, Sharon knew she had been shot multiple times and that she was badly burned. Moreover, the testimony regarding the severity of Sharon's injuries is further circumstantial evidence that Sharon believed her death was imminent. Although Sharon also expressed concern for her children, her statements clearly were directed at revealing the cause and circumstances of her impending death. Finally, although Sharon was mistaken regarding the ages of her children, she was clear with regard to the circumstances causing her injuries, and she accurately provided both her home address and Dees's address. Thus, the mistake regarding her children's ages did not preclude the trial court from finding that she was of sound mind. Because the evidence established that Sharon's statements to Banner, Cheesebrew,

and Officer Tillery regarding the cause and circumstances of her impending death were made while she believed her death was imminent, the trial court did not err in admitting the statements under the dying declarations exception, and the admission of the testimony as dying declarations did not infringe upon Denson's right of confrontation. *Giles*, 554 U.S. at 358-59; *Gardner*, 306 S.W.3d at 289.

### CRIME SCENE VIDEO

Denson also asserts the trial court erred in admitting into evidence the crime scene video of Dees's house where Sharon and Dees were shot and which was set on fire. Denson contends the prejudicial effect of the video substantially outweighed its probative value.

During trial, two separate objections were made to the admission of the video. The first objection was made at the time the video was introduced into evidence. The second objection was made immediately prior to the portion of the video showing Dees's body. Denson's appellate complaint is based on this second objection.

Denson contends that the video is duplicative of the autopsy photographs depicting Dees's body. Denson further contends that "most of the segments show full frontal nudity, with his penis and pubic area clearly visible." Denson notes that Dees "was not shot in that area of his body." Similarly, Denson asserts that the video's depiction of the burns to Dees's body was prejudicial because the burns did not cause his death. Finally, Denson asserts that the remaining segments of the video, showing personnel from the medical examiner's office photographing and manipulating Dees's body, are duplicative of the testimony and autopsy photographs.

Under Rule 403 of the Texas Rules of Evidence, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." TEX. R. EVID. 403. "A judge's ruling on a Rule 403 objection will be reversed only for a clear abuse of

discretion." *Matamoros v. State*, 901 S.W.2d 470, 476 (Tex. Crim. App. 1995). "So long as the trial court's ruling is within the zone of reasonable disagreement, it will be upheld." *Id*.

Although Denson focuses his argument only on the segments of the video after his second objection that showed Dees's body, the portion of the video that remained to be played at the time of Denson's second objection depicted significant evidence other than Dees's body, including evidence of forced entry into the house, the trail of blood left by Sharon as she sought help from neighboring houses before she collapsed on the sidewalk, and evidence of other shell casings and bullet holes. Even in his brief, Denson isolates partial segments from the remaining portion of the video in an effort to support his argument.

With regard to Denson's contention that the video was duplicative of the autopsy photographs, the Texas Court of Criminal Appeals has held that "a still photograph is not cumulative of a videotape." *Id*. "A videotape allows a jury an overall perspective that is simply not available from photographs." *Id*. "While still photographs offer an isolated and fixed content, a video recording allows a more panoramic representation of the physical and forensic evidence." *Id*.

With regard to the video showing the burns to Dees's body and his nudity, a videotape that simply reflects the gruesomeness or reality of the crime is not sufficient reason for its exclusion. *Ripkowski v. State*, 61 S.W.3d 378, 392 (Tex. Crim. App. 2001). Evidence of the burns and the area where the fire started was clearly probative of the cause of the burns to Sharon's body and linked to the singed hair on Denson's arms, the burns on his legs, and the gasoline found on the caps and gloves retrieved from his car.

Even if we were to assume the trial court erred in admitting the crime scene video into evidence, "[w]e do not reverse a ruling based on nonconstitutional error that does not affect

'substantial rights.'" *Neal v. State*, 256 S.W.3d 264, 284-85 (Tex. Crim. App. 2008). "If, after examining the record as a whole, we determine that any error had a slight or no effect on the jury, then we will not overturn the trial court's ruling." *Id.* "[T]he presence of overwhelming evidence of guilt plays a determinative role in this analysis." *Id.* (internal citations omitted).

Denson repeatedly complains on appeal about the "full frontal nudity" shown in the video. The jury, however, was charged with determining whether Denson murdered Dees. Given Sharon's testimony identifying Denson as the person who shot Dees and the evidence linking Denson to the fire at Dees's home, we conclude error, if any, in admitting the crime scene video had a slight or no effect on the jury's verdict. Accordingly, we overrule Denson's complaint on appeal.

## CONCLUSION

The trial court's judgment is affirmed.

Karen Angelini, Justice

DO NOT PUBLISH