**AFFIRMED; Opinion Filed May 27, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-15-01219-CR
No. 05-15-01221-CR
No. 05-15-01222-CR

**THE STATE OF TEXAS, Appellant**
**V.**
**GORDON HEATH ELROD, Appellee**

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause Nos. F15-40913-I, F15-40914-I, and F15-40915-I**

## MEMORANDUM OPINION

Before Justices Lang, Lang-Miers, and Brown
Opinion by Justice Lang

We withdraw our opinion and vacate our judgments of May 25, 2016. This is now the

opinion of the Court.

The State appeals the trial court's order granting appellee Gordon Heath Elrod's motions

to suppress. In a single issue, the State contends the trial court erred "when it overruled the

magistrate's decision that probable cause existed to issue a search warrant." We affirm the trial

court's order. Because all issues are settled in law, we issue this memorandum opinion. TEX. R.

APP. P. 47.4.

### 1. FACTUAL AND PROCEDURAL CONTEXT

Appellee was charged with fraudulent use or possession of identifying information in

cause number F15-40913-I, and with two counts of tampering with a governmental record in

cause numbers F15-40914-I and F15-40915-I. He filed a motion to suppress evidence in each case. The motions were identical; each challenged the affidavit supporting a search warrant issued at 10:35 a.m. on April 28, 2015, to search room 119 of the Executive Inn located at 3447 E. Highway 30 in Mesquite, Texas. The affidavit was signed by Investigator Smith of the Mesquite Police Department.

In the affidavit Smith stated that on April 27, 2015 "at approximately 17:23 hours," four police officers were dispatched to a One Star Food Mart in Mesquite in reference to a forgery. Most of the affidavit addresses the officers' investigation of the forgery of a check presented at that location. The affidavit details the officers' identification of four suspects at the food mart. Appellee was not one of the suspects. Only one of the suspects, Marsha Stovall, was taken into custody in connection with the forgery. In Stovall's purse and pockets, officers found two social security cards and a driver's license, as well as a notebook listing names, social security numbers, and addresses.

Smith's affidavit states that "at approximately 1900 hours" on the same day, two police officers "made contact with Gordon in room #119 at the Executive Inn located at 3447 E Hwy 30 Mesquite, TX 75150. Officers advised they observed computers and printers in the room." The affidavit does not explain how the officers identified the location or "Gordon."

According to the affidavit, Smith interviewed Stovall at the Mesquite jail at 8:30 a.m. the following morning. During the interview Stovall explained that she had been staying at room 119 of the Executive Inn for the last few days before her arrest. She stated that a driver's license and social security card she used in attempting to cash a "counterfeit" check at the food mart were printed in room 119, as was the check itself. She said that appellee, his wife Alisha Davis, and their two children were occupying the room. According to Stovall, appellee and Davis were mail thieves who were using information from stolen mail to print "counterfeit" checks, driver's

–2–

licenses, and social security cards. They used two desk top computers and four printers in room 119.

Smith's affidavit was attached and incorporated by reference to an affidavit requesting a search warrant for room 119 of the Executive Inn. A magistrate found that "the verified facts stated by Affiant in said Affidavit show that Affiant has probable cause for the belief he expresses herein and establishes the existence of proper grounds for the issuance of the warrant." The magistrate issued the search warrant at 10:35 a.m. on April 28, 2015. A warrant was issued by the magistrate for appellee's arrest the following day.

After a hearing on the State's motion to reconsider the grant of appellee's motions to suppress, the trial court made written findings of fact, including the following findings:

- the search warrant was issued "a mere two hours" after Smith went to the Mesquite Jail to interview Stovall;

- the affidavit "fails to provide any explanation for how or why the officers would be going to the Executive Inn to contact 'Gordon' on April 27, at 7:00 p.m. when Investigator Smith did not receive information concerning that location until the next day when he interviewed Marsha Stovall at some time after 8:30 a.m. in the morning";

- "Nothing in the affidavit indicates the officers had any information concerning Room 119 at the Executive Inn prior to Marsha Stovall's statements on the morning of April 28, 2015";

- Marsha Stovall "was a named criminal informant. As such her information was inherently unreliable and required some measure of corroboration in order to provide probable cause for the issuance of a search warrant. A named criminal informant does not enjoy the same presumption of reliability that a named citizen informant does";

- "Without the portion of the affidavit describing Officers Walzel's and Berg's observations of the computers and printers in Room 119 and their contact with 'Gordon' on April 27, 2015, there is no independent corroboration of Marsha Stovall's information";

- the warrant "fails to state any reason why Officers Walzel and Berg would go to Room 119 of the Executive Inn the day before Marshal Stovall informed Investigator Smith of the location of the room and the occupants of the room. The Court therefore finds that the portion of the affidavit referring to Officer Walzel's and Officer Berg's observations at the Executive Inn and their contact with 'Gordon' is not credible and should be excluded from the affidavit";

–3–

- "Without independent corroboration of Marsha Stovall's information the Court finds that the affidavit fails to provide sufficient probable cause for the issuance of the search warrant."

The trial court signed an order granting appellee's motions to suppress. This appeal followed.

## 2. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We give "almost total deference" to a trial court's determination of historical facts supported by the record, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Id.* (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We review de novo mixed questions of law and fact that do not depend upon credibility and demeanor. *Id.*

## 3. APPLICABLE LAW

The federal and state constitutions require a magistrate to find "probable cause" that a particular item will be found in a particular location before issuing a search warrant. *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). A totality of the circumstances test is used when evaluating the question of probable cause to issue a warrant. *Matamoros v. State*, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995) (citing *Illinois v. Gates*, 462 U.S. 213, 230–31 (1983)). As the *Duarte* court explained, the test is whether a reasonable reading by the magistrate would lead to the conclusion that the four corners of the affidavit provide a "substantial basis" for issuing the warrant. *Duarte*, 389 S.W.3d at 354.

Probable cause exists when, under the totality of the circumstances, there is a "fair probability" that contraband or evidence of a crime will be found at the specified location. *Id.* This is a flexible, nondemanding standard. Neither federal nor Texas law defines precisely what degree of probability suffices to establish probable cause. *Id.* However, a magistrate's action cannot be a mere ratification of the bare conclusions of others. *Id.*

We give great deference to a magistrate's determination of probable cause. *Id.* But we must "conscientiously review the sufficiency of affidavits on which warrants are issued." *Id.* After reviewing the supporting affidavit "realistically, and with common sense," we must uphold the magistrate's decision as long as the magistrate had a substantial basis for concluding probable cause existed. *Id.* The focus is not on what other facts could or should have been included in the affidavit; the focus is on the combined logical force of facts that are in the affidavit. *Id.*

The reliability of the affiant and his sources of information are part of the totality of the circumstances the magistrate should evaluate in making his probable cause determination. *State v. Coker*, 406 S.W.3d 392, 396 (Tex. App.—Dallas 2013, pet. ref'd). "Citizen informants" who witness criminal activity and thereafter report it as a matter of civic duty are considered "inherently reliable." *Duarte*, 389 S.W.3d at 355–357. Informants "from the criminal milieu" do not enjoy any presumption of reliability, but may be considered reliable if their information is corroborated by independent police work or if they have a successful "track record" of providing true and correct information. *Id.*

### 4. APPLICATION OF LAW TO FACTS

The State contends the affidavit supported the magistrate's finding of probable cause because (1) the affidavit had a named informant; (2) the informant provided a "detailed, first-hand account of criminal activity"; (3) the informant made the account against her own penal interest; and (4) the police corroborated the informant's tip, and in any event, corroboration is not required. We address these contentions in turn.

First, although Stovall was named in the affidavit, she does not enjoy the same presumption of reliability as a citizen informant. *See id.* at 356. Even if Stovall had not been named, her information could have been considered reliable if coupled with other facts, such as a

successful track record as an informant or corroboration by independent police work. *See id.* at 358. "[W]hen a probable cause affidavit specifies a named informant as supplying the information upon which probable cause is based, the affidavit is sufficient if it is sufficiently detailed to suggest direct knowledge on the informant's part." *Matamoros*, 901 S.W.2d at 478. Identification of the informant alone is insufficient. *See id.* (named informant's statement sufficient where informant had direct knowledge of appellant's culpability; statement was corroborated by independent observation of police officers; and informant was not co-defendant or suspect in investigation). The affidavit details how the interview with Stovall came about, but does not provide any information about Stovall's credibility or reliability. Instead, Stovall was interviewed because she was attempting to cash a "counterfeit" check with "counterfeit" identification.

Second, in her interview Stovall revealed that (1) she had been staying in the motel room in question; (2) the "counterfeit" check, driver's license, and social security card she used the previous day at the food mart were printed in the motel room; (3) there were two desk top computers and two printers in the room; (4) appellee and his family were occupying the room; (5) when Stovall left the room on the previous day at 5:00 p.m., appellee and his wife were printing "counterfeit" checks, driver's licenses, and social security cards; and (6) appellee and his wife were mail thieves and the information used on the "counterfeited" items came from stolen mail which was also inside the motel room. While we agree with the State that Stovall provided some detail of how she obtained the "counterfeit" check and identification, there is nothing in the affidavit to assist the magistrate in determining the credibility of the information. Although our focus "is not on what other facts could or should have been included in the affidavit," *see Duarte*, 389 S.W.3d at 354–55, we must "conscientiously review the sufficiency" of the affidavit to ensure that the magistrate's action is not "a mere ratification of the bare

conclusions of others." *See id.* at 354. Here, Smith concluded there was probable cause of "further evidence inside the dwelling" at the address of the Executive Inn on the basis of Stovall's statements alone. Smith's conclusions, and therefore the magistrate's conclusions, were based upon Stovall's untested credibility.

Third, the affidavit does not reflect whether or not Stovall made the statements against her own penal interest. The affidavit states that Stovall was given and understood the *Miranda* warning. But the six statements from Stovall's interview deflect blame to appellee and his wife rather than further implicate Stovall in the events leading to her arrest. The "combined logical force" of Stovall's statements did not indicate any culpability on her part other than that already observed by police on the previous day. *See id.*

Fourth, as the trial court's findings reflect, the police did not corroborate the information received from Stovall; instead, the affidavit states that officers visited the motel on April 27, the evening before they received any information from Stovall. The officers "advised they observed computers and printers in the room." No activity was reported to support an inference of "'fair probability' that contraband or evidence of a crime will be found at the specified location." *Id.* (quoting *Gates*, 462 U.S. at 238)). The warrant was issued shortly after Stovall's interview the following morning.

The State argues the officers' visit could have taken place before the warrant was issued. The State contends the magistrate could have reasoned that the officers would not have known to go to room 119 of the Executive Inn before interviewing Stovall. Therefore, the magistrate could have concluded that the date given in the affidavit for the officers' visit (April 27) was a typographical error, especially since the report of the visit was in the paragraph following the details of Stovall's interview on April 28 and the remainder of the affidavit was in chronological order. However, if the date was a typographical error, then the time stated, "1900 hours" (7:00

–7–

p.m.) for the officers' visit to the motel was incorrect as well. The interview with Stovall took place at "approximately 0830 hours" (8:30 a.m.) on April 28, and the warrant was issued at 10:35 a.m. on the same day. A search at 7:00 p.m. on April 28 would have taken place more than eight hours after the warrant was issued. The reason for giving "great deference" to the magistrate's finding of probable cause is "to encourage police officers to use the warrant process." *Id.* at 354. "[T]he informed and deliberate determinations of magistrates . . . are to be preferred over the hurried actions of officers" to ensure the constitutionality of search warrants. *Id.* If indeed the affidavit contained errors regarding the sequence of events, then the magistrate relied on the "hurried actions of officers" in proffering the affidavit less than two hours after Stovall's interview rather than any "informed and deliberate determinations." *See id.*

The State also argues that in any event, "express corroboration is not a per se rule." However, it was not error for the trial court to consider the lack of corroboration as a factor in determining Stovall's credibility and the reliability of her information. The reliability of the affidavit depended upon Stovall's credibility. The magistrate's and the trial court's task was to determine whether a "reasonable reading . . . would lead to the conclusion that the four corners of the affidavit provide a 'substantial basis' for issuing the warrant." *Id.* The existence or lack of corroboration may be considered in determining the "totality of the circumstances" supporting probable cause. *See Matamoros*, 901 S.W.2d at 478.

In sum, only two of the affidavit's fourteen paragraphs contain information about either appellee or the premises to be searched. One of the two paragraphs reports the interview with Stovall; the other reports the visit by officers to the premises the previous evening. The remainder of the affidavit explains the events surrounding the investigation of the forgery at the food mart, detailing the activities of suspects other than appellee at locations other than the Executive Inn. Much of the affidavit details Stovall's culpability for forgery, not her credibility

or reliability. After reviewing the supporting affidavit "realistically, and with common sense," we conclude the magistrate did not have "a substantial basis for concluding that probable cause existed." *See Duarte*, 389 S.W.3d at 354.  The trial court did not err in so ruling.  We decide the State's issue against it.

## CONCLUSION

We affirm the trial court's order granting appellee's motions to suppress.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
151219F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-15-01219-CR        V.

GORDON HEATH ELROD, Appellee

On Appeal from the Criminal District Court No. 2, Dallas County, Texas
Trial Court Cause No. F15-40913-I.
Opinion delivered by Justice Lang;
Justices Lang-Miers and Brown, participating.

We **WITHDRAW** our opinion and **VACATE** our judgment of May 25, 2016. This is now the judgment of the Court.

Based on the Court's opinion of this date, the trial court's order granting appellee Gordon Heath Elrod's motion to suppress is **AFFIRMED**.

Judgment entered this 27th day of May, 2016.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-15-01221-CR     V.

GORDON HEATH ELROD, Appellee

On Appeal from the Criminal District Court No. 2, Dallas County, Texas
Trial Court Cause No. F15-40914-I.
Opinion delivered by Justice Lang; Justices Lang-Miers and Brown, participating.

We **WITHDRAW** our opinion and **VACATE** our judgment of May 25, 2016. This is now the judgment of the Court.

Based on the Court's opinion of this date, the trial court's order granting appellee Gordon Heath Elrod's motion to suppress is **AFFIRMED**.

Judgment entered this 27th day of May, 2016.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-15-01222-CR     V.

GORDON HEATH ELROD, Appellee

On Appeal from the Criminal District Court
No. 2, Dallas County, Texas
Trial Court Cause No. F15-40915-I.
Opinion delivered by Justice Lang;
Justices Lang-Miers and Brown,
participating.

We **WITHDRAW** our opinion and **VACATE** our judgment of May 25, 2016. This is now the judgment of the Court.

Based on the Court's opinion of this date, the trial court's order granting appellee Gordon Heath Elrod's motion to suppress is **AFFIRMED**.

Judgment entered this 27th day of May, 2016.