PD-0985-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/5/2015 4:12:03 AM
Accepted 8/6/2015 2:47:10 PM
ABEL ACOSTA
CLERK

**No. PD** _____

_____

## In The Court of Criminal Appeals of Texas

_____

## SHANNON JOE CHAUNCEY, APPELLANT

## V.

## STATE OF TEXAS, APPELLEE

_____

**On Appellant's Petition for Discretionary Review
From the Fourteenth Court of Appeals of Texas
Appeal No. 14-13-00950-CR
On Appeal from the 230th District Court
Of Harris County, Texas
Cause No. 1365315**

_____

**PETITION FOR DISCRETIONARY REVIEW
FOR APPELLANT, SHANNON JOE CHAUNCEY**

_____

Brian M. Middleton
7322 Southwest Freeway, Suite 1980
Houston, Texas 77074
Telephone: (713) 680-3296
Facsimile: (713) 680-3242
Texas Bar No. 90001967
<u>Attorney for Appellant</u>

Oral Argument Requested

## IDENTIFICATION OF PARTIES

Pursuant to RULE 38.1 of the Texas Rule of Appellate Procedure, a complete list of the names of all interested parties is provided below so the members of this Honorable Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the case.

Appellant:
SHANNON JOE CHAUNCEY

Trial Counsel:
STEVE SHELLIST
STEVEN FRAZIER

Counsel for Appellant:
Brian M. Middleton

Counsel for the State:
DEVON ANDERSON
District Attorney of Harris County, Texas

ALLISON BAIMBRIDGE
Assistant District Attorney of Fort Bend County, Texas

Trial Judge:
THE HONORABLE BRAD HART

# Table of Contents

Identification of the Parties…………………………………………………………………ii

Index of Authorities..................................................................................................iii

Statement Regarding Oral Argument........................................................................iv

Statement of the Case................................................................................................2

Procedural History of the Case..................................................................................2

Grounds for Discretionary Review: Whether the court of appeals erred in affirming the trial
court……...……………………………………………………………………...3

Arguments to the Court of Appeals............................................................................3

The Court of Appeals' Response to
Appellant'sArguments…………………………………………………………..6

Argument in Support of Grounds for Discretionary Review………………………………12

Appendix A

# INDEX OF AUTHORITIES

**Cases**

*Alami v. State*, 333 S.W.3d 881, 890 (Tex. App.—Fort Worth 2011, no pet.)................... 8

*Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999)............................. 7

*Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981) .................................... 6

*Gordon v. State*, 784 S.W.2d 410, 412 (Tex. Crim. App. 1990) ........................................... 8

*Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999) ..................................... 11

*Matamoros v. State*, 901 S.W.2d 470, 476 (Tex. Crim. App. 1995) ................................. 7

*Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009)............................................. 10

*Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995)....................................... 7

*Tennard v. State*, 802 S.W.2d 678, 683 (Tex. Crim. App. 1990)................................. 11, 12

*Trevino v. State*, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999) ......................................... 10

*Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000)..................................... 12

## Rules

Tex. R. App. P. 68.4(c)....................................................................................................iv

Tex. R. App. P. 66.3(b)……………………………………………………………………  3

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Tex. R. App. P. 68.4(c)Tex. R. App. P. 68.4(c), counsel respectfully requests oral argument. Oral argument would be helpful in the event this petition for discretionary review is granted. This appeal involves questions of law, questions of fact, public policy and procedure which cannot be adequately addressed, analyzed and evaluated through written communication alone. Oral argument is essential to emphasize the unique characteristics of these questions and to address the unforeseeable exigencies arising during the Court's consideration of this appeal.

No. PD _____


_____

In The Court of Criminal Appeals of Texas


_____


SHANNON JOE CHAUNCEY, Appellant

v.

THE STATE OF TEXAS, Appellee.


_____


**On Appellant's Petition for Discretionary Review
From the Fourteenth Court of Appeals of Texas
Appeal No. 14-13-00950-CR
On Appeal from the 230th District Court
Of Harris County, Texas
Cause No. 1365315**


_____


PETITION FOR DISCRETIONARY REVIEW
FOR APPELLANT, SHANNON JOE CHAUNCEY

_____


<u>TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL
APPEALS</u>:

COMES NOW Appellant, Shannon Joe Chauncey, by and through his

attorney of record, Brian M. Middleton, and files this his petition for

1

discretionary review of the decision of the First Court of Appeals of Texas in *Shannon Joe Chauncey v. State*, No. 14-13-00950-CR, slip op. (Tex. App.–Houston [14th Dist.], June 30, 2015, pet. pending); and would respectfully show the Court following:

<u>STATEMENT OF THE CASE</u>

The court of appeals erred in affirming the trial court's decision.

<u>PROCEDURAL HISTORY OF THE CASE</u>

On October 7, 2013, Appellant pled not guilty to charge of felony murder. (5 R.R. at 15). On October 14, 2013, a jury found Appellant guilty of the offense of felony murder as charged in the indictment. (9 R.R. at 43). On October 15, 2013, the jury sentenced Appellant to confinement in the Institutional Division of the Texas Department of Criminal Justice for a period of thirty-seven (37) years. (11 R.R. at 44). On October 15, 2013, Appellant timely filed his notice of appeal. (1 C.R. at 82).

On June 30, 2015, the Court of Appeals affirmed the trial court's decision.

## GROUND ONE

Review is appropriate, under Tex. R. App. P. 66.3(b), because the Court of Appeals has rendered a decision which encompasses an important question of state and federal law, which has not been, but should be, settled by this Court.

## GROUND TWO

Review is proper, under Tex. R. App. P. 66.3 (f), because the Court of Appeals has so far departed from the accepted and usual course of judicial proceedings, as to call for an exercise of this Court's power of supervision.

## ARGUMENTS TO THE COURT OF APPEALS

**Point of Error Number One:**

The affidavit used to support a search warrant for Appellant's cell phone did not allege an offense date and contained conclusory statements. Thus, the affidavit was inadequate to support the issuance of the search warrant.

**Point of Error Number Two:**

State's exhibits 114 and 115 were photographs of Hollingshead laying in a hospital bed while wearing a breathing apparatus and a head brace. Said photographs were essentially victim-impact evidence and were not relevant to guilt/innocence.

**Point of Error Number Three:**

State's exhibits 51 and 54 through 59 were 81/2 by 11 inch color photographs of Shawn Williams, Jr. charred and partially clothed body inside of Hollingshead's burned vehicle. The photos were obviously gruesome and superfluous and should not have been allowed into evidence as such evidence was unfairly prejudicial.

**Point of Error Number Four:**

State's exhibit 63 was a copy of Shay Hollingshead's medical records. Said medical records were essentially victim-impact evidence and were not relevant to guilt/innocence and were unfairly prejudicial during guilt innocence.

**Point of Error Number Five**:

State's exhibit 60 was a color video recording of officers removing Shay Hollingshead's limp, partially clothed body from his burned vehicle. There were numerous other videos admitted showing the pursuit of appellant and the collision. Exhibit 60 was particularly gruesome and disturbing. Thus, the trial court erred in not sustaining Appellant's objection.

**Point of Error Number Six:**

State's exhibits 88, 89, 90, 91, and 92 were 81/2 by 11 inch color photographs showing Shawn Williams, Jr.'s body. State's exhibit 91 and 93 were particularly gruesome as they showed the interior of Williams skull and some of Appellant's internal organs which had been removed. Because the photos were so gruesome, the trial court erred in allowing the State to introduce said exhibits.

**Point of Error Number Seven:**

The prosecutor's improper comment that Appellant or his expert witness had failed to offer polygraph results was improper jury argument and unfairly prejudicial. The trial court provided a general instruction to disregard the prosecutor's last comment was inadequate to address the prosecutor's improper comment.

<u>THE COURT OF APPEALS RESPONSE</u>

<u>TO APPELLANT'S ARGUMENTS</u>

The Court of Appeals responded to Appellant's points of error affirmed Appellant's conviction.

"A motion to suppress is nothing more than a specialized objection to the admissibility of evidence and an appellant complaining of the trial court's ruling on the motion to suppress must show harm in order to prevail.

5

4

*See* Tex. R. App. P. 44.2; *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981). When objectionable evidence is not offered, however, no harm results from any error in overruling the motion to suppress because the ultimate result—the exclusion of the evidence—is the same as if the motion had been sustained. *Galitz*, 617 S.W.2d at 952. We have inspected the entire record and cannot find where the complained-of evidence was admitted at trial. Although the prosecutor stated that the cell phone records were pre-admitted in a hearing, the cell phone records were not made an exhibit and were not introduced at trial. Further, the prosecutor did not call any witness to testify as to what was found on appellant's cell phone. Because the objectionable evidence was never offered at trial, there is nothing for us to review.

We overrule appellant's first issue."

"At trial, Hollingshead testified about the injuries he suffered from the accident. Hollingshead testified that he woke up in the hospital with a contraption on his head, a chest plate, and four bars in his skull used to keep his neck still. He also discussed the extent of his injuries which included collapsed lungs, broken ribs, a burst spleen, three broken bones in his vertebra, a broken femur, minor brain damage, and second and third-degree burns on twenty percent of his body. This testimony was admitted into the record without objection.

The two photographs of Hollingshead in the hospital were admitted after he testified about his injuries. Exhibit 114 is a close-up photograph of Hollingshead lying in a hospital bed. The photograph depicts

Hollingshead shirtless, with a neck brace, breathing tube, and bandages on his body. Exhibit 115 is also a photograph of Hollingshead lying in a hospital bed and shows several bars set around his head. Nothing is depicted in the two photographs which was not also included in Hollingshead's testimony. *See Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999) (noting that color photographs of victim shot in the face depicted nothing outside of what was included in testimony of State's pathologist). The record reflects that only Exhibits 114 and 115 were admitted at trial, even though numerous photographs of Hollingshead's injuries were admitted during the punishment phase. The photographs were relevant to show the damage that resulted from appellant's act of evading the police, "an act clearly dangerous to human life" that caused the complainant's death. *See* Tex. Penal Code § 19.02(b)(3).

Because the photographs are not more prejudicial than probative, the trial court did not abuse its discretion by overruling appellant's rule 403 objection and admitting them into evidence.

We overrule appellant's second issue."

Close-up photographs and photographs taken from different vantage points add to the jury's understanding of the condition of the crime scene. *Matamoros v. State*, 901 S.W.2d 470, 476 (Tex. Crim. App. 1995). Photographs permit the jury to examine a scene in detail. *See id.* Although the photographs are gruesome and disagreeable to look at, "they depict nothing more than the reality of the brutal crime committed." *Sonnier v.*

7

*State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995); *see also Chamberlain*, 998 S.W.2d at 237 ("The photographs are gruesome in that they depict disagreeable realities, but they depict nothing more than the reality of the brutal crime committed."). Visual evidence accompanying testimony is most persuasive and often gives the factfinder a point of comparison against which to test the credibility of a witness and the validity of his conclusions. *Chamberlain*, 998 S.W.2d at 237. The photographs are powerful visual evidence, probative of various aspects of the State's theory of the offense, including the brutality and heinousness of the offense. *Sonnier*, 913 S.W.2d at 519. Although the photographs depict the charred body of the complainant in the burned-out vehicle, the photographs portray no more than the disturbing consequences of appellant's felony murder offense. *See Alami v. State*, 333 S.W.3d 881, 890 (Tex. App.—Fort Worth 2011, no pet.) (holding that the trial court did not err by admitting post-collision photograph, showing interior of victim's vehicle with deceased victim lying in the passenger seat).

Under these circumstances, we cannot say that the photographs are more prejudicial than probative. *See Chamberlain*, 998 S.W.2d at 237. A trial court does not abuse its discretion merely because it admits into evidence photographs which are gruesome. *Sonnier*, 913 S.W.2d at 519; *see also Shavers v. State*, 881 S.W.2d 67, 77 (Tex. App.—Dallas 1994, no pet.) ("The fact that the scene depicted in the photograph is gory and gruesome does not make the photograph more prejudicial than probative when the crime scene is gory and gruesome."). Thus, the trial court did not abuse its discretion by admitting Exhibits 51, 54, 55, 56, 57, 58, and 59.

8

We overrule appellant's third issue."

The rules applicable to photographs also apply to a videotape. *Gordon v. State*, 784 S.W.2d 410, 412 (Tex. Crim. App. 1990). A videotape allows a jury an overall perspective that is simply not available from photographs. *Matamoros*, 901 S.W.2d at 476. While still photographs offer an isolated and fixed content, a video recording allows a more panoramic representation of the physical and forensic evidence. *Id*. Like the photographs of the burned-out vehicle, the video depicts nothing more than the reality of the brutal crime appellant committed. *See Chamberlain*, 998 S.W.2d at 237. Because the videotape is not more prejudicial than probative, we hold that the trial court did not abuse its discretion by admitting Exhibit 60.

We overrule appellant's fifth issue."

"Because of the nature of the complainant's death, the autopsy photographs are gruesome. However, the medical examiner used the photographs to explain the complainant's external and internal injuries to the jury. Under the circumstances of this case, we cannot say that the trial court abused its discretion in determining that the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice.

We overrule appellant's sixth issue."

"Because the trial court ruled in appellant's favor during the guilt-innocence phase of trial, he did not preserve this error for review.

To the extent appellant contends that the trial court erred by admitting the medical records into evidence during the punishment phase, we disagree. When the State sought to admit the medical records into evidence during the punishment phase, appellant did not state any objection. Thus, appellant has failed to preserve error for review. *See* Tex. R. App. P. 33.1.

We overrule appellant's fourth issue."

"In his seventh issue, appellant argues that the trial court erred by denying his motion for mistrial after the prosecutor made a comment during her closing statement regarding a polygraph examination.

We review the denial of a motion for mistrial for an abuse of discretion. *Trevino v. State*, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999). We view the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). A trial court does not abuse its discretion when its decision is within the zone of reasonable disagreement. *See id.*

At trial, appellant called an expert witness, Dr. Bethany Brand, to testify as to her opinion regarding appellant's mental condition. Dr. Brand stated that she conducted several tests on appellant to form her opinion that appellant suffered from post-traumatic stress disorder and polysubstance dependence. During closing arguments, the prosecutor made the following comment: "Dr. Brand told us about tests after tests after

10

tests, right? That she chose. She chose them. One test that we never heard about her giving the defendant to make sure he wasn't making this up, polygraph. Never." Appellant's counsel immediately objected to the improper comment and the trial court sustained the objection. Appellant's counsel asked for an instruction for the jury to disregard the comment. The trial court promptly gave an instruction, stating the "[j]ury will be instructed to disregard the last statement from the prosecutor." Appellant's counsel then moved for a mistrial, which the trial court denied.

A mistrial is an appropriate remedy in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Id.* A mistrial halts trial proceedings when the error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Id.* A trial court may properly exercise its discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). Whether an error requires a mistrial must be determined by the particular facts of the case. *Id.*

It is well established that the existence and results of a polygraph examination are inadmissible for all purposes. *Tennard v. State*, 802 S.W.2d 678, 683 (Tex. Crim. App. 1990). However, "*Tennard* stands for the proposition that when a polygraph is actually administered, the existence of the polygraph test and results thereof are inadmissible for all purposes." *Garcia v. State*, 907 S.W.2d 635, 638 (Tex. App.—Corpus Christi 1995),

11

*aff'd*, 981 S.W.2d 683 (Tex. Crim. App. 1998). Here, the prosecutor did not state that appellant actually took a polygraph examination, nor was it inferred that he refused to take one. The prosecutor only stated that Dr. Brand chose not to give appellant a polygraph examination. No results of any polygraph test were revealed to the jury. Thus, the trial court did not err by denying appellant's motion for mistrial.

Furthermore, in most instances, an instruction to disregard an improper remark will cure any error. *See Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). Here, the trial court promptly instructed the jury to disregard the prosecutor's remark regarding the lack of a polygraph examination. We presume that the jury followed the trial court's instruction to disregard the remark. *Id.* at 116.

We overrule appellant's seventh issue."

## ARGUMENT IN SUPPORT OF GROUNDS FOR DISCRETIONARY REVIEW

The Fourteenth Court of Appeals has stretched and misapplied this Court's ruling in *Tennard v. State*, 802 S.W.2d 678, 683 (Tex. Crim. App. 1990). The Fourteenth Court of Appeals held, "Here, the prosecutor did not state that appellant actually took a polygraph examination, nor was it inferred that he refused to take one. The prosecutor only stated that Dr.

12

Brand chose not to give appellant a polygraph examination. No results of any polygraph test were revealed to the jury. Thus the trial court did not err by denying appellant's motion for  mistrial." Then in utter contradiction the Fourteenth Court of Appeals held "Here, the trial court promptly instructed the jury to disregard the prosecutor's remark regarding the lack of a polygraph examination."  Thus, the Fourteenth seems to reason that it was not an error for the prosecutor to state that Appellant did not take a polygraph but the trial court was correct in instructing the jury to disregard the prosecutor's comment that he did not take a polygraph.

In *Tennard*, this court held that "Where the defense insists on a mistrial, the sufficiency of an instruction to disregard polygraph evidence generally depends on whether the results of the exam were revealed to the jury." In the instant case, the prosecutor was clearly trying to create the impression that Appellant  took a lot of test but did not take a polygraph test. The prosecutor was clearly telling the jury that Appellant did not take a polygraph examination which left the impression that Appellant could have taken a polygraph examination for the jury to consider. The prosecutor's statement was worse than mentioning that a polygraph examination was administered without revealing the results, because it left the impression

13

that Appellant could have taken a polygraph examination and presented it to the jury but elected not to do so.

IV.

WHEREFORE, PREMISES CONSIDERED, Appellant, Shannon Joe Chauncey, prays that the Court grant the Petition for Discretionary Review for Appellant, order briefing on this cause, and set it for submission at the earliest possible date. Moreover, upon submission and review of the appellate record and the briefs and arguments of counsel, the Court find reversible error in the judgments of both the Fourteenth Court of Appeals in appeal number 14-13-00950-CR and of the 230th District Court of Harris County, Texas in cause number 1365315. In accordance with this Court's finding of reversible error, appellant also requests that the Court then issue its opinion and judgment reversing the judgments of the Fourteenth Court of Appeals and the 230th District Court of Harris County, Texas, remand this cause to the 230th District Court, assess all costs of the appeal against Appellee, and order execution of its judgment in accordance with its opinion.

Respectfully submitted,

/s/ Brian M. Middleton____
Brian M. Middleton
7322 Southwest Freeway, Suite 1980
Houston, Texas 77074
Telephone: (713) 680-3296
Facsimile: (713) 680-3242
Email: attorney@middletonlawfirm.com
Texas Bar No. 90001967

14

Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3) of Texas Rules of Appellate Procedure, the undersigned hereby by certifies that the foregoing document contains 3519 words.

/s/ Brian M. Middleton
Brian M. Middleton

## CERTIFICATE OF SERVICE

In accordance with Tex. R. App. P. 9.5, I, Brian M. Middleton, certify that a true and correct copy of the foregoing Petition for Discretionary Review has been served, by U.S. Mail upon the attorney of record for the State of Texas, the Harris County District Attorney, 1201 Franklin, Houston, Texas 77002 on 30th day of July, 2015 and on the 5th of August after adding the identification of parties section per the request of the clerk.

/s/ Brian M. Middleton
Brian M. Middleton

# APPENDIX

**Affirmed and Memorandum Opinion filed June 30, 2015.**



In The

# Fourteenth Court of Appeals

NO. 14-13-00950-CR

**SHANNON JOE CHAUNCEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1365315**

## M E M O R A N D U M    O P I N I O N

Appellant Shannon Joe Chauncey appeals his conviction for felony murder. A jury found appellant guilty and the trial court sentenced him to thirty-seven years in prison. In several issues on appeal, appellant contends that the trial court erred by denying his motion to suppress, admitting various photographs and a videotape, and denying his motion for mistrial. We affirm.

BACKGROUND

On October 19, 2012, appellant and his girlfriend, Jennifer Jenkins, were shoplifting at various stores in Baytown, Texas. At 9:03 p.m., police officers were dispatched to the San Jacinto Mall because a caller reported that there was a possible theft at Sears. The caller observed two suspects steal merchandise from Sears and travel to Academy. Police officers arrived at Academy and Detective Scott Vice entered the store to look for the two suspects. Detective Vice observed Jenkins gathering merchandise and taking it into a dressing room. Appellant exited the store by himself and walked to his Ford F-150 truck parked outside in the parking lot. Appellant began slowly driving around searching for police vehicles and made several loops around the parking lot. He then pulled up to the exit doors of Academy, flashed his lights, and Jenkins exited the store. At that time, undercover officers in unmarked vehicles surrounded appellant's truck. Appellant reversed his truck into one of the officer's vehicles and pushed it back so that he could escape. The officers immediately exited their vehicles and drew their weapons. Appellant drove around the officers, peeled through the parking lot, jumped the curb, and ploughed through a ditch.

Marked patrol cars began pursuing appellant and Jenkins on Garth Road for several miles. The police deployed a spike strip across the road to deflate appellant's tires and stop his truck. Appellant then struck a Ford Focus at the intersection of Garth Road and Rollingbrook. The Ford Focus was stopped at the intersection, waiting for a red light to change. An accident reconstructionist testified that appellant was traveling between 79 and 97 miles per hour when he hit the Ford Focus. Shay Hollingshead was the driver of the Ford Focus and the complainant, Shawn Williams, was in the passenger seat.

Both vehicles immediately burst into flames. Appellant and Jenkins jumped

out of the truck and ran, but were quickly apprehended by the police. Officers and bystanders pulled Hollingshead out of the driver's seat but because of the flames, they did not see that the complainant was in the passenger seat. Hollingshead was transported to a hospital to be treated for extensive injuries from the collision. The complainant was killed instantly upon impact.

Appellant was indicted for felony murder. Appellant pleaded not guilty. The case proceeded to trial and the jury rendered a guilty verdict on October 15, 2013. The jury assessed punishment at thirty-seven years in prison.

**ISSUES AND ANALYSIS**

In seven issues, appellant contends that (1) the trial court erred by denying his motion to suppress the search warrant of his cell phone; (2) the trial court erred by admitting photographs of Hollingshead in the hospital; (3) the trial court erred by admitting photographs of the accident scene; (4) the trial court erred by admitting Hollingshead's medical records; (5) the trial court erred by admitting a video of the officers pulling Hollingshead from the burning vehicle; (6) the trial court erred by admitting autopsy photographs; and (7) the trial court erred by denying his motion for a mistrial based on a comment the prosecutor made during her closing statement.

### I.    Motion to Suppress

In his first issue, appellant contends that the trial court erred by denying his motion to suppress evidence found on his cell phone because the affidavit used to support the search warrant contained conclusory statements and did not allege an offense date.

A motion to suppress is nothing more than a specialized objection to the admissibility of evidence and an appellant complaining of the trial court's ruling

on the motion to suppress must show harm in order to prevail. *See* Tex. R. App. P. 44.2; *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981). When objectionable evidence is not offered, however, no harm results from any error in overruling the motion to suppress because the ultimate result—the exclusion of the evidence—is the same as if the motion had been sustained. *Galitz*, 617 S.W.2d at 952. We have inspected the entire record and cannot find where the complained-of evidence was admitted at trial. Although the prosecutor stated that the cell phone records were pre-admitted in a hearing, the cell phone records were not made an exhibit and were not introduced at trial. Further, the prosecutor did not call any witness to testify as to what was found on appellant's cell phone. Because the objectionable evidence was never offered at trial, there is nothing for us to review.

We overrule appellant's first issue.

## II.    Photographs and Videotape

In several issues, appellant contends that the trial court erred by admitting into evidence several photographs and a videotape. Specifically, appellant complains of the following: (1) two photographs of Hollingshead in the hospital; (2) seven photographs of the burned-out Ford Focus with the complainant inside at the accident scene; (3) a videotape of police officers pulling Hollingshead out of his vehicle; and (4) five autopsy photographs.

Rule 403 provides that although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by consideration of undue delay, or needless presentation of cumulative evidence. Tex. R. Evid. 403. Several factors may be considered in determining whether the danger of unfair prejudice substantially outweighs the probative value of photographs, including the number of exhibits offered, their gruesomeness, their detail, their size, whether they are

4

black and white or color, whether they are close-up, whether the body is naked or clothed, and the availability of other means of proof and the circumstances unique to each individual case. *Emery v. State*, 881 S.W.2d 702, 710 (Tex. Crim. App. 1994) (quoting *Long v. State*, 823 S.W.2d 259, 272 (Tex. Crim. App. 1991)). Rule 403 favors admissibility and presumes relevant evidence is more probative than prejudicial. *Rayford v. State*, 125 S.W.3d 521, 529 (Tex. Crim. App. 2003).

The admissibility of photographs is within the sound discretion of the trial court and is reviewed for abuse of discretion. *Jones v. State*, 843 S.W.2d 487, 501 (Tex. Crim. App. 1992), *abrogated on other grounds*, *Maxwell v. State*, 48 S.W.3d 196 (Tex. Crim. App. 2001). We will not disturb the trial court's ruling unless the ruling falls outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

### A. The trial court did not err by admitting photographs of Hollingshead in the hospital

Appellant asserts that the trial court erred by admitting State's Exhibits 114 and 115, which are two photographs of Hollingshead in the hospital. Appellant argues that the photographs were not relevant because they were of Hollingshead, not the complainant. In response, the State argues that the photographs were relevant to show the damage resulting from appellant's act of evading police that was clearly dangerous to human life, an element of the charged offense. *See* Tex. Penal Code § 19.02(b)(3).

Exhibits 114 and 115 were relevant to the State's case because the State alleged that appellant committed felony murder. A person commits felony murder if he commits a felony other than manslaughter, and in the course of and in furtherance of the felony's commission, he commits an act clearly dangerous to human life that causes the death of an individual. *Id*. Generally, photographs are

5

admissible if verbal testimony is admissible which described that which the photographs depict. *Emery*, 881 S.W.2d at 710.

At trial, Hollingshead testified about the injuries he suffered from the accident. Hollingshead testified that he woke up in the hospital with a contraption on his head, a chest plate, and four bars in his skull used to keep his neck still. He also discussed the extent of his injuries which included collapsed lungs, broken ribs, a burst spleen, three broken bones in his vertebra, a broken femur, minor brain damage, and second and third-degree burns on twenty percent of his body. This testimony was admitted into the record without objection.

The two photographs of Hollingshead in the hospital were admitted after he testified about his injuries. Exhibit 114 is a close-up photograph of Hollingshead lying in a hospital bed. The photograph depicts Hollingshead shirtless, with a neck brace, breathing tube, and bandages on his body. Exhibit 115 is also a photograph of Hollingshead lying in a hospital bed and shows several bars set around his head. Nothing is depicted in the two photographs which was not also included in Hollingshead's testimony. *See Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999) (noting that color photographs of victim shot in the face depicted nothing outside of what was included in testimony of State's pathologist). The record reflects that only Exhibits 114 and 115 were admitted at trial, even though numerous photographs of Hollingshead's injuries were admitted during the punishment phase. The photographs were relevant to show the damage that resulted from appellant's act of evading the police, "an act clearly dangerous to human life" that caused the complainant's death. *See* Tex. Penal Code § 19.02(b)(3).

Because the photographs are not more prejudicial than probative, the trial court did not abuse its discretion by overruling appellant's rule 403 objection and

admitting them into evidence.

We overrule appellant's second issue.

**B. The trial court did not err by admitting photographs of the accident scene**

In his third issue, appellant contends that the trial court erred by admitting Exhibits 51, 54, 55, 56, 57, 58, and 59, which mainly consist of post-collision photographs of Hollingshead's burned-out Ford Focus with the complainant in the passenger seat of the vehicle. In several of these photographs, the complainant's charred and unclothed body is visible. Appellant argues that the gruesomeness of the photographs inflamed the minds of the jurors and that one photograph, instead of six, would have been sufficient to depict the scene.

Exhibit 51 is a photograph that depicts the driver's side of the vehicle, but the complainant's body is not immediately visible in the photograph.[1] Exhibit 54 shows a close-up view of the driver's side window. Although the complainant's body is not immediately visible, his thigh and knee can be seen in the photograph. Exhibit 55 is a photograph of the vehicle from the front, showing the vehicle's smashed windshield and the complainant's body slouched over in the passenger seat. Exhibit 56 is a close-up photograph of the complainant's body slouched over in the passenger seat, next to the smashed windshield. The photograph also shows the extensive damage to the vehicle caused by the fire. Exhibit 57 is an even closer view of the complainant through the windshield of the vehicle. Exhibit 58 is a photograph from the passenger side of the vehicle, showing the complainant's body falling out of the vehicle. In Exhibits 55, 56, 57, and 58, the complainant's

---

[1] After appellant objected, the trial court stated "[i]s there something in particular that - - I mean, am I missing . . . I don't know if yall will point this out, but I couldn't even tell that from - - but I understand what you're saying." The prosecutor then agreed that he would not point out the body in the photograph to the jury.

upper body can be seen, in which he is unclothed and his injuries from the fire are visible. Exhibit 59 is a photograph of the charred interior of the vehicle.[2]

Officer Gallegos testified that when he arrived at the scene, he saw that appellant's truck and Hollingshead's vehicle were both on fire. He stated that when he eventually got to the Ford Focus, a civilian was attempting to pull Hollingshead from the driver's side of the vehicle. Officer Gallegos and three more officers struggled to pry the driver's side door open because it was melting from the fire. Officer Gallegos grabbed Hollingshead's legs and pulled him out of the burning vehicle with help from the other officers. He stated that he could not see the complainant because the vehicle was completely engulfed in flames. Four photographs of the wrecked vehicle were then admitted to aid Officer Gallegos in his testimony, including Exhibit 51. The photographs depicted the condition of the vehicle after the flames were extinguished. Nothing is depicted in Exhibit 51 which was not also included in Officer Gallegos's testimony. *See Chamberlain*, 998 S.W.2d at 237.

Officer Nathaniel Brown also testified about the scene of the accident. Officer Brown stated that when he arrived, the vehicle was completely engulfed in flames and he could see Hollingshead leaning forward in the driver's seat, trapped inside the vehicle. He testified that he and the other officers pulled him out of the vehicle but it was difficult because of the fire. Officer Brown stated that once the fire department extinguished the flames, they learned that the complainant died while in the passenger seat of the vehicle. He stated that they could not see the complainant inside the vehicle while they were pulling Hollingshead out of the

---

[2] Although appellant complains about Exhibit 59 on appeal, the record reflects that this exhibit was admitted by agreement of the parties. Because appellant did not object to the admission of Exhibit 59 at trial, he has waived any argument regarding this photograph on appeal. *See* Tex. R. App. P. 33.1(a).

driver's seat. After learning that the complainant had died, Officer Brown went back to the vehicle to see him and further investigate. Exhibits 54, 55, 56, 57, and 58 corroborate Officer Brown's testimony regarding the extensive damage to the vehicle.

Close-up photographs and photographs taken from different vantage points add to the jury's understanding of the condition of the crime scene. *Matamoros v. State*, 901 S.W.2d 470, 476 (Tex. Crim. App. 1995). Photographs permit the jury to examine a scene in detail. *See id*. Although the photographs are gruesome and disagreeable to look at, "they depict nothing more than the reality of the brutal crime committed." *Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995); *see also Chamberlain*, 998 S.W.2d at 237 ("The photographs are gruesome in that they depict disagreeable realities, but they depict nothing more than the reality of the brutal crime committed."). Visual evidence accompanying testimony is most persuasive and often gives the factfinder a point of comparison against which to test the credibility of a witness and the validity of his conclusions. *Chamberlain*, 998 S.W.2d at 237. The photographs are powerful visual evidence, probative of various aspects of the State's theory of the offense, including the brutality and heinousness of the offense. *Sonnier*, 913 S.W.2d at 519. Although the photographs depict the charred body of the complainant in the burned-out vehicle, the photographs portray no more than the disturbing consequences of appellant's felony murder offense. *See Alami v. State*, 333 S.W.3d 881, 890 (Tex. App.—Fort Worth 2011, no pet.) (holding that the trial court did not err by admitting post-collision photograph, showing interior of victim's vehicle with deceased victim lying in the passenger seat).

Under these circumstances, we cannot say that the photographs are more prejudicial than probative. *See Chamberlain*, 998 S.W.2d at 237. A trial court does

not abuse its discretion merely because it admits into evidence photographs which are gruesome. *Sonnier*, 913 S.W.2d at 519; *see also Shavers v. State*, 881 S.W.2d 67, 77 (Tex. App.—Dallas 1994, no pet.) ("The fact that the scene depicted in the photograph is gory and gruesome does not make the photograph more prejudicial than probative when the crime scene is gory and gruesome."). Thus, the trial court did not abuse its discretion by admitting Exhibits 51, 54, 55, 56, 57, 58, and 59.

We overrule appellant's third issue.

### C. The trial court did not err by admitting the video from the accident scene

In his fifth issue, appellant contends that the trial court erred by admitting Exhibit 60, a video showing several police officers pulling Hollingshead from the driver's side of his vehicle while it was engulfed in flames.

Exhibit 60 is a video taken from one of the police officer's dashboard camera and shows the Ford Focus on fire. In the video, the officers are seen pulling Hollingshead out of the driver's seat of the vehicle while he is unconscious. The officers carried him away from the vehicle and laid him on the ground. Although Hollingshead is unconscious in the video, he is clothed and no visible injuries can be seen. Exhibit 60 was used to corroborate Officer Brown's testimony regarding the scene of the accident. *See Emery*, 881 S.W.2d at 710. This testimony was admitted into the record without objection.

The rules applicable to photographs also apply to a videotape. *Gordon v. State*, 784 S.W.2d 410, 412 (Tex. Crim. App. 1990). A videotape allows a jury an overall perspective that is simply not available from photographs. *Matamoros*, 901 S.W.2d at 476. While still photographs offer an isolated and fixed content, a video recording allows a more panoramic representation of the physical and forensic evidence. *Id*. Like the photographs of the burned-out vehicle, the video depicts

nothing more than the reality of the brutal crime appellant committed. *See Chamberlain*, 998 S.W.2d at 237. Because the videotape is not more prejudicial than probative, we hold that the trial court did not abuse its discretion by admitting Exhibit 60.

We overrule appellant's fifth issue.

**D. The trial court did not err by admitting the autopsy photographs**

In his sixth issue, appellant asserts that the trial court erred by admitting five autopsy photographs. Specifically, appellant complains of the following: (Exhibit 88) a close-up identification photograph of the complainant's charred face, which was taken to assist the family in identifying him; (Exhibit 89) a photograph of the complainant's charred face and unclothed torso; (Exhibit 90) a photograph of the complainant's unclothed and charred torso, pelvic area, thighs, knees, and legs; (Exhibit 91) a photograph of the complainant's skull split in half, indicating where his spinal cord separated from his brain; and (Exhibit 92) a photograph of the complainant's removed spinal cord, depicting where it was cut in half.

Autopsy or post-autopsy photographs can be used to illustrate injuries and to reveal cause of death. *Drew v. State*, 76 S.W.3d 436, 452 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). Autopsy photographs are generally admissible as long as they aid the jury in understanding the injury and do not depict the mutilation caused by the autopsy itself. *Id*.; *see also Rojas v. State*, 986 S.W.2d 241, 249 (Tex. Crim. App. 1998) (holding that autopsy photographs were admissible because depicted gunshot wounds and trauma to pelvic area were the result of appellant's actions, not the autopsy itself).

The five photographs accompanied the testimony of the State's medical examiner who performed the autopsy. The photographs depict nothing outside of

11

the medical examiner's testimony. The record does not reveal how many photographs were taken during the autopsy, but only five photographs were admitted at trial. The medical examiner testified that the selected photographs aided him during his investigation and that they would aid the jury in understanding the injuries that caused the complainant's death. He further stated that the photographs would aid the jury in understanding his testimony regarding the complainant's lack of external injuries and presence of internal injuries.

The medical examiner used Exhibits 88, 89, and 90 to show that the complaint did not have any external injuries, aside from extensive charring due to thermal injuries caused by the flames. He stated that these three photographs were important to show the lack of external injuries. He also stated that he selected Exhibit 88 because he routinely chooses an identification photograph when he testifies. The mere fact that appellant is unclothed in two of the photographs used to illustrate the charring on his body is not sufficiently inflammatory to outweigh the photographs' probative value. *See Rojas*, 986 S.W.2d at 249 (photograph of unclothed victim with legs apart displaying trauma to pelvic area admissible); *Morales v. State*, 897 S.W.2d 424, 428 (Tex. App.—Corpus Christi 1995, pet. ref'd) (photograph of unclothed victim with bullet wounds and numerous ant bites admissible). Although these photographs are gruesome, they assisted the medical examiner in explaining the complainant's lack of external injuries to the jury.

When photographs depict internal organs which have been removed, portraying the extent of the injury to the organ itself, "there is no depiction of 'mutilation of the victim.'" *Salazar v. State*, 38 S.W.3d 141, 152 (Tex. Crim. App. 2001). Because there is no danger that the jury would attribute the removal of the organs to the defendant, the fact that the jury views photographs depicting organs that were removed from the victim's body is not, by itself, determinative of

whether the exhibits should have been admitted. *Id*. The medical examiner used Exhibits 91 and 92 to describe the internal injuries that the complainant suffered. Neither photograph shows any mutilation caused by the autopsy. Both photographs are probative of the nature of the complainant's injuries and force caused by appellant's truck striking him while in the vehicle.

Because of the nature of the complainant's death, the autopsy photographs are gruesome. However, the medical examiner used the photographs to explain the complainant's external and internal injuries to the jury. Under the circumstances of this case, we cannot say that the trial court abused its discretion in determining that the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice.

We overrule appellant's sixth issue.

### III. Medical Records

Appellant contends that the trial court erred by denying his objection to the admission of Exhibit 63, which contains Hollingshead's medical records. Appellant argues that the medical records were reflective of the impact the collision had on Hollingshead and consequently, were not relevant and were unfairly prejudicial. Appellant's brief does not clearly state whether he is arguing that the trial court erred by admitting the medical records during the guilt-innocence phase of trial or the punishment phase. Thus, we will address both arguments.

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Id*.

Although appellant seems to complain about the admission of the medical records at trial, the record reflects that the medical records were not admitted into evidence during the guilt-innocence phase of trial. When discussing whether to admit the medical records, appellant's counsel objected under Rule 403. The trial court sustained his objection, stating "[f]or purposes of guilt/innocence, defense objection to State's Exhibit No. 63 will be sustained." To preserve error on appeal, the complaining party must timely object and receive an adverse ruling on his objection. *See* Tex. R. App. P. 33.1; Tex. R. Evid. 103(a). Because the trial court ruled in appellant's favor during the guilt-innocence phase of trial, he did not preserve this error for review.

To the extent appellant contends that the trial court erred by admitting the medical records into evidence during the punishment phase, we disagree. When the State sought to admit the medical records into evidence during the punishment phase, appellant did not state any objection. Thus, appellant has failed to preserve error for review. *See* Tex. R. App. P. 33.1.

We overrule appellant's fourth issue.

## IV.   Motion for Mistrial

In his seventh issue, appellant argues that the trial court erred by denying his motion for mistrial after the prosecutor made a comment during her closing statement regarding a polygraph examination.

We review the denial of a motion for mistrial for an abuse of discretion. *Trevino v. State*, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999). We view the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). A trial court does not abuse its discretion

14

when its decision is within the zone of reasonable disagreement. *See id*.

At trial, appellant called an expert witness, Dr. Bethany Brand, to testify as to her opinion regarding appellant's mental condition. Dr. Brand stated that she conducted several tests on appellant to form her opinion that appellant suffered from post-traumatic stress disorder and polysubstance dependence. During closing arguments, the prosecutor made the following comment: "Dr. Brand told us about tests after tests after tests, right? That she chose. She chose them. One test that we never heard about her giving the defendant to make sure he wasn't making this up, polygraph. Never." Appellant's counsel immediately objected to the improper comment and the trial court sustained the objection. Appellant's counsel asked for an instruction for the jury to disregard the comment. The trial court promptly gave an instruction, stating the "[j]ury will be instructed to disregard the last statement from the prosecutor." Appellant's counsel then moved for a mistrial, which the trial court denied.

A mistrial is an appropriate remedy in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Id*. A mistrial halts trial proceedings when the error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Id*. A trial court may properly exercise its discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). Whether an error requires a mistrial must be determined by the particular facts of the case. *Id*.

It is well established that the existence and results of a polygraph examination are inadmissible for all purposes. *Tennard v. State*, 802 S.W.2d 678, 683 (Tex. Crim. App. 1990). However, "*Tennard* stands for the proposition that

15

when a polygraph is actually administered, the existence of the polygraph test and results thereof are inadmissible for all purposes." *Garcia v. State*, 907 S.W.2d 635, 638 (Tex. App.—Corpus Christi 1995), *aff'd*, 981 S.W.2d 683 (Tex. Crim. App. 1998). Here, the prosecutor did not state that appellant actually took a polygraph examination, nor was it inferred that he refused to take one. The prosecutor only stated that Dr. Brand chose not to give appellant a polygraph examination. No results of any polygraph test were revealed to the jury. Thus, the trial court did not err by denying appellant's motion for mistrial.

Furthermore, in most instances, an instruction to disregard an improper remark will cure any error. *See Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). Here, the trial court promptly instructed the jury to disregard the prosecutor's remark regarding the lack of a polygraph examination. We presume that the jury followed the trial court's instruction to disregard the remark. *Id*. at 116.

We overrule appellant's seventh issue.

## CONCLUSION

We overrule appellant's seven issues and affirm the judgment of the trial court.


/s/      Ken Wise
         Justice


Panel consists of Justices Christopher, Donovan, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).