**Opinion filed January 9, 2025**



## In The

# Eleventh Court of Appeals

_____

## No. 11-23-00267-CR

_____

### CRISTOPHER FATE GRAVES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 106th District Court**
**Gaines County, Texas**
**Trial Court Cause No. 21-5554**

### M E M O R A N D U M   O P I N I O N

Appellant, Cristopher Fate Graves, was indicted for the offense of fraudulently obtaining and possessing identifying information, a state jail felony. TEX. PENAL CODE ANN. § 32.51(c)(1) (West Supp. 2024). After he pled guilty to this offense, the jury assessed his punishment at two years' confinement in a state jail facility and a $2,400 fine. PENAL § 12.35(a), (b). The trial court sentenced Appellant accordingly. In a single issue, Appellant asserts that the trial court abused

its discretion when it denied his challenge for cause to a certain venire member. We affirm.

## I. *Factual Background*

Because the only issue in this appeal concerns the trial court's denial of Appellant's challenge for cause of venire member S.P., we will restrict our recitation of the facts to those relevant to this issue.

Once the summoned venire members were seated and sworn, the trial court began directing qualification questions to the venire members. One of the questions posed was whether they could read and write the English language. After asking the qualification questions, the trial court invited any venire member who believed that they were disqualified to serve as a juror to approach the bench and explain their reasons to the trial court and trial counsel. One venire member approached and advised that he was disqualified because he could neither read nor write.

Later, defense counsel attempted to explain the concept of mitigation and how it could apply during the punishment phase. Defense counsel defined mitigation as anything that a juror might consider relevant to reducing one's culpability and recommending a proper sentence. Defense counsel then asked each venire member to answer a scaled question that sought to measure the members' feelings about the importance of mitigation in assessing punishment. This question was essentially framed in the form of a statement: "If a person commits an offense, mitigating evidence should not matter in setting punishment." The venire members were asked to rank their agreement with this statement along the following scale: one-strongly agree, two-agree, three-neutral, four-disagree, and five-strongly disagree.

When this mitigation question was posed to venire member S.P., she stated: "I'm confused. I couldn't understand, I guess." Defense counsel offered another explanation and attempted to clarify the purpose of the mitigation question, and another venire member offered to explain the question to S.P. in German, which

apparently is S.P.'s first language. Defense counsel then stated that the parties could later question S.P. at the bench and continued posing the mitigation question to the other venire members individually.

Later, the trial court called S.P. to the bench to clarify her understanding of the mitigation question. The State asserted that the question, as phrased, was not designed to elicit a proper challenge for cause, but defense counsel expressed concern about S.P.'s understanding of what mitigation entailed, particularly because another venireperson had offered to explain it to her in German. S.P. told the trial court that she was confused by the question. She explained that she was "not good enough with the English . . . [w]ith the hard words." The trial court then offered the following explanation to S.P.:

> And his question was, that if he was to put on some evidence saying about some good things that he had done -- you know, some good things -- you could consider that. Okay. So the punishment is -- you have to decide what the punishment will be, but he -- they provide you evidence of some good things that he's done. Would you be able to -- would you be willing to consider some of those good things, or in your mind, it doesn't matter? I don't care how many good things he's done. If he committed this crime, then I'm going to punish him based on only the crime, not good things.

S.P. responded: "If he committed a crime, he is guilty." The trial court continued:

> True, but we've -- so if you already found him guilty, now we're talking about the punishment. So when it came to decide how to punish him, would you -- would you consider the good things he'd done, or would you say, "I don't care about the good things. I'm only going to consider his punishment based on the bad thing he did"?

S.P. then responded that even if "good things" were said about Appellant, if he committed a crime, he should be punished.

Immediately after this, the trial court and defense counsel had the following exchange:

3

THE COURT: Okay. Sounds to me like she's about a one or two . . . I don't think that's a reason to strike for cause.

[DEFENSE COUNSEL]: I do have concerns about her ability to process the English language, I guess.

THE COURT: I mean, I think that she understands -- she . . . was able to converse with me in English.

[DEFENSE COUNSEL]: Right.

THE COURT: When asked the question about being able to read and write, she never came forward and said that she couldn't read or write. So it may be some -- I mean, I'll be honest with you. There are people who English is their first language that -- that don't understand the word "mitigation."

Defense counsel then moved to challenge S.P. for cause because, as he stated, "[T]he last thing she said . . . she just wouldn't consider it at all." The trial court denied the challenge.

Later, defense counsel used a peremptory challenge to dismiss S.P. and, because he did, he requested that the trial court grant him an additional peremptory challenge. In making his request, defense counsel explained that, because the trial court denied the challenge for cause that he raised as to S.P., it was necessary for Appellant to use a peremptory challenge to dismiss S.P. rather than using it to dismiss another objectionable venireperson, B.M., who was later seated and sworn as a juror. The trial court denied the request and defense counsel replied, "I renew my objection to the [challenge for] cause."

## II. *Standard of Review*

We review a trial court's ruling on a challenge for cause for an abuse of discretion. *Hudson v. State*, 620 S.W.3d 726, 731 (Tex. Crim. App. 2021). "[W]e look to the entire record to determine whether sufficient evidence exists to support the [trial] court's ruling." *Id.* (citing *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010)). Because the trial court is in the best position to evaluate a potential

4

juror's demeanor and responses, the trial court's ruling is given considerable deference. *Id.* (citing *Gardner v. State*, 306 S.W.3d 274, 295–96 (Tex. Crim. App. 2009)).

### III. *Analysis*

A challenge for cause is an objection that is made to a prospective juror, in which the party asserting the challenge claims that some fact exists which renders the challenged person incapable or unfit to serve as a juror. TEX. CODE CRIM. PROC. ANN. art. 35.16(a) (West 2006). Article 35.16 of the Code of Criminal Procedure lists specific challenges for cause that may be raised; one such challenge is based on a juror's alleged "mental defect" and another concerns whether the juror cannot read or write. *Id.* art. 35.16(a)(5), (11). With three exceptions that are not relevant here, all the grounds for challenges listed in Article 35.16 may be waived. *Id.* art. 35.16(a); *Vera v. State*, 496 S.W.3d 293, 295 (Tex. App.—San Antonio 2016, pet. ref'd).

In his sole issue, Appellant argues that the trial court abused its discretion when it denied his challenge for cause to venire member S.P. On appeal, Appellant characterizes his challenge for cause as a "mental defect" challenge. *See* CRIM. PROC. art. 35.16(a)(5). He contends that this ground is not limited to a juror's level of intelligence or the presence of a mental disease, but that it also encompasses a juror's ability to comprehend "the limited function of a juror," including the jury's role in assessing punishment. He cites to *Matamoros*, *Gardner*, and *Burton* for this proposition. *See Matamoros v. State*, 901 S.W.2d 470, 476–77 (Tex. Crim. App. 1995) ("A venireman's inability to comprehend the limited function of a juror at the punishment phase of a capital case may constitute 'such . . . [a] mental defect . . . as to render him unfit for jury service.'") (quoting *Gardner v. State*, 730 S.W.2d 675, 695 (Tex. Crim. App. 1987)); *Burton v. State*, 805 S.W.2d 564, 568 (Tex. App.— Dallas 1991, pet. ref'd) ("Low intelligence is not necessarily a ground for challenge

5

under [A]rticle 35.16(a)(5); however, the venireman must be able to comprehend the limited function of a juror.").

A. *Potential Harm and Preservation of Error*

We first consider whether Appellant has shown that he was harmed by the trial court's adverse ruling. *Hudson*, 620 S.W.3d at 729 (addressing harm before addressing whether the trial court abused its discretion in denying a challenge for cause); *Comeaux v. State*, 445 S.W.3d 745, 747 (Tex. Crim. App. 2014) ("The issue, however, is one of harm, not preservation."); *see Johnson v. State*, 43 S.W.3d 1, 5 n.6 (Tex. Crim. App. 2001) (stating that "[i]n the past we have confused preservation of error and harm issues within the context of an erroneous denial of a challenge for cause," and noting that the steps that courts have sometimes called necessary for preservation are really to show harm).

Harm from the trial court's erroneous denial of a defendant's challenge for cause focuses on whether the defendant was wrongfully stripped of a peremptory challenge. *Hudson*, 620 S.W.3d at 729. Therefore, in addition to demonstrating trial court error, Appellant must show that he complied with five steps: (1) he made a "clear and specific challenge for cause" against a venire member; (2) he used a peremptory challenge on the complained-of venire member; (3) he exhausted all of his remaining peremptory challenges; (4) he requested an additional strike and the request was denied; and (5) an objectionable juror served on the jury. *Id.* at 729–30 (quoting *Comeaux*, 445 S.W.3d at 750). These steps are intended to allow the trial court every opportunity to correct its error and for the defendant to demonstrate that he was unable to use his peremptory challenges in the way that he desired. *Id.*

On appeal, Appellant contends that S.P. suffered from a mental defect that rendered her incapable or unfit to serve as a juror under Article 35.16(a)(5). He contends that S.P. was confused about the concept of mitigation and how it applied to the jury's role in assessing punishment. He also asserts that the trial court's efforts

to clarify the matter with S.P. did little, if anything, to resolve her confusion. Appellant claims that, contrary to the trial court's belief that S.P. expressed a strong agreement ("one" on the scaled question) or an agreement ("two" on the scaled question) to the mitigation question, S.P.'s response merely stated a truism—that if Appellant was guilty, he should be punished. Appellant reasons that, "[r]egardless of whether her limitations on her understanding stemmed from language or other factors, the evidence clearly demonstrated that she did not understand the role of a juror during the punishment phase."

The State contends that Appellant failed to make a "clear and specific" challenge for cause. The State asserts that the concern expressed by Appellant about S.P. was that she would not consider mitigating evidence in assessing punishment. The State further contends that, although defense counsel's initial concern involved S.P.'s ability to understand some concepts in English, defense counsel later agreed with the trial court's assessment that S.P. was able to converse in and understand English. Therefore, the State reasons, Appellant's challenge for cause was not clear and specific because it did not allege that a mental defect—Appellant's argument on appeal—caused S.P. to be incapable or unfit to serve as a juror. And, according to the State, because Appellant did not argue before the trial court that a mental defect was the ground on which his challenge for cause was based, that argument has been waived on appeal.

We agree with the State that Appellant failed to make a "clear and specific" challenge for cause. The "clear and specific" requirement ensures that the defendant alerts the trial court to the defendant's complaint in a timely manner so that it may be addressed. *Hudson*, 620 S.W.3d at 729–30. In this instance, defense counsel did not specifically state an enumerated ground for his challenge under Article 35.16(a); he merely stated that he wanted to assure that S.P. understood the concept of "mitigation," and that he did not want the other venire member to explain it to S.P.

7

in German. After S.P. stated that the defendant could "do a lot of good things" but if she believed he committed the offense "he needs to be punished," the trial court asked defense counsel if her response sufficiently answered his mitigation question. Defense counsel replied, "I think so," and then stated that he had "concerns about her ability to process the English language." Defense counsel and the trial court then briefly discussed S.P.'s English fluency. During their discussion, the trial court expressed its belief, based on its observations of and discussions with S.P., that S.P. understood English, and defense counsel responded: "Right." After this, defense counsel asserted a challenge for cause, and in referring to S.P.'s answer to the mitigation question, stated: "[B]ecause I think the last thing she said . . . she just wouldn't consider it at all." Now, on appeal, Appellant asserts that S.P. was disqualified under subsection (a)(5).[1]

### 1. *Language Comprehension Falls Under Subsection (a)(11)*

As an initial matter, we note that Appellant has waived any complaint regarding S.P.'s alleged inability to comprehend English. In this regard, Texas courts have repeatedly held that a lack of fluency in the English language falls under subsection (a)(11)—that the juror cannot read or write. *See, e.g.*, *Reydom v. State*, No. 05-19-01486-CR, 2020 WL 7693179, at *4 (Tex. App.—Dallas Dec. 28, 2020, no pet.) (mem. op., not designated for publication) ("Encompassed in [Article 35.16(a)(11)] is a juror's inability to understand English.") (citing *Montoya v. State*, 810 S.W.2d 160, 170 (Tex. Crim. App. 1989)); *Vera*, 496 S.W.3d at 295 (same);

---

[1]Although Appellant admits that a juror is not required to give effect to any specific mitigation evidence, citing *Rachal v. State*, 917 S.W.2d 799, 813 (Tex. Crim. App. 1996), he nonetheless contends that jurors should understand that mitigating factors may be presented during the punishment phase and that this evidence is relevant to the jury's decision to assess a particular sentence.

*Stillwell v. State*, 466 S.W.3d 908, 912 (Tex. App.—Fort Worth 2015, no pet.) (citing *Montoya*, 810 S.W.2d at 170).

Unlike other subsections in Article 35.16(a), because neither subsection (a)(5) nor (a)(11) encompasses an absolute disqualification, challenges based on these subsections must be raised to and addressed by the trial court before the jury is empaneled and sworn; otherwise, a party forfeits the right to complain of and to rely on those bases on appeal. Crim. Proc. arts. 35.16(a), 35.19; *see Parnell v. State*, No. 02-19-00070-CR, 2020 WL 5666565, at *7 (Tex. App.—Fort Worth Sept. 24, 2020, pet. ref'd) (mem. op., not designated for publication); *see also Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); *Stillwell*, 466 S.W.3d at 913.

Here, it appears that Appellant eventually agreed with the trial court that S.P. could sufficiently comprehend English. Moreover, Appellant's issue on appeal is grounded in subsection (a)(5)—a mental defect challenge—and therefore does not comport with any argument or objection that he made before the trial court that S.P.'s comprehension of English was the reason for her alleged inability to understand the jury's role. *See Webb*, 232 S.W.3d 112; *Stillwell*, 466 S.W.3d at 913; *Parnell*, 2020 WL 5666565, at *7; *see also* Tex. R. App. P. 33.1(a)(1)(A); *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016) (the arguments on appeal must comport with the objection raised at trial); *Arevalo v. State*, 675 S.W.3d 833, 845 (Tex. App.—Eastland 2023, no pet.).[2]

---

[2]Moreover, defense counsel did not ask S.P. any questions regarding her comprehension of the English language, which likely forfeited Appellant's right to complain about this basis on appeal. *See Parnell*, 2020 WL 5666565, at *7 ("Following *Stillwell* and *Vera*, we hold that [the] [a]ppellant forfeited the right to complain of Gonzalez's presence on the jury on the basis of his inability to understand English by not questioning the venire panel about their ability to understand English and by not raising a timely challenge for cause to Gonzalez during voir dire."); *Hawkins v. State*, No. 10-18-00270-CR, 2020 WL 5938818, at *2 (Tex. App.—Waco Aug. 10, 2020, pet. ref'd) (mem. op., not designated for publication) ("Hawkins never questioned the juror regarding her ability to read or write during voir dire . . . . the trial court determined that the juror was able to communicate with the trial court adequately and Hawkins never attempted to show that the juror was wholly unable to speak, read, or comprehend English."); *see also Vera*,

Also, as noted above, Appellant cites to *Matamoros*, *Gardner*, and *Burton* for the proposition that subsection (a)(5) is not limited to a prospective juror's lack of intelligence or the presence of a mental disease, but that it also encompasses a prospective juror's ability to comprehend a juror's role and responsibilities, including the jury's role in assessing punishment. *See Matamoros*, 901 S.W.2d at 476; *Gardner*, 730 S.W.2d at 695; *Burton*, 805 S.W.2d at 568. Contrary to Appellant's argument, these cases simply hold that it is the inability to understand the juror's role, rather than the juror's lack of intelligence "per se," that renders a potential juror incapable or unfit to serve on the jury. *See Gardner*, 730 S.W.2d at 695. One such sign of a mental defect may be the trial court's inability to determine the venire member's views for the purpose of deciding whether other possible grounds of disqualification exist. *Matamoros*, 901 S.W.2d at 476–77 (citing *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)). Thus, the cases cited by Appellant do not support the proposition that one's difficulty or inability to understand English is tantamount to a "mental defect." *See Stillwell*, 466 S.W.3d at 911–912 (holding that a juror's inability to understand English is not a disabling condition, but rather is included within and pertains to the ground for a challenge for cause on the basis that the venire member cannot read or write); *see also Parnell*, 2020 WL 5666565, at *7.

---

496 S.W.3d at 295–96 ("[The] [a]ppellant's failure to ask specific enough questions to determine whether anyone on the venire panel had difficulty reading, writing, or understanding English waived any complaint for our review."); *Stillwell*, 466 S.W.3d at 913 ("In this case, no one questioned the panel during voir dire about their ability to understand English. Regardless of a county's practice in screening potential jurors, the attorneys are not relieved of their duty to determine [the] capability or fitness of the jurors during voir dire.").

Even though another venire member offered to explain the mitigation question to S.P. in German, defense counsel did not present any questions to S.P. about her ability to understand English. And although defense counsel informed the trial court that he had some "concerns about her ability to process the English language," when the trial court noted that "[w]hen asked the question of being able to read and write, [S.P.] never came forward and said that she couldn't read or write," defense counsel likewise did not ask S.P. any questions about her English comprehension.

### 2. *Appellant's Challenge Was Based on S.P.'s Beliefs About Mitigation*

As discussed above, after the trial court explained the concept of mitigation to S.P., she responded that even if he "[did] a lot of good things," if he committed the offense, "he needs to be punished." The trial court asked defense counsel if S.P.'s response sufficiently answered his question, to which defense counsel responded: "I think so." The trial court then stated that S.P.'s response appeared to be a "one" (strongly agree that mitigation evidence should not matter in setting punishment) or a "two" (agree that mitigation evidence should not matter) on the scaled question. Defense counsel did not disagree, but instead expressed concerns about S.P.'s ability to understand English. When defense counsel later challenged S.P. for cause, his stated reason was: "[B]ecause I think the last thing she said . . . she just wouldn't consider [mitigation] at all." Thus, the challenge that Appellant raised against S.P. was explicitly and only based on her response that she would not consider mitigating evidence in assessing punishment.

Therefore, we agree with the State that, based on this record, Appellant failed to show harm or preserve a complaint for our review because he did not make a "clear and specific" challenge for cause *on the basis that S.P. suffered a mental defect*. *See Gardner*, 306 S.W.3d at 300 ("Because appellant failed to describe what type of challenge he was exercising or the specific basis for a challenge for cause (if he intended a challenge for cause), he failed to preserve any issue for appellate review concerning this venire member.").

### B. *On the Merits, the Trial Court did not Abuse its Discretion*

Nevertheless, even if Appellant had satisfied the steps that are necessary to show harm, his argument fails on the merits. After S.P. expressed confusion about defense counsel's mitigation question, the trial court, defense counsel, and the State spoke with her at the bench about her response to defense counsel's inquiry. The trial court explained the concept of mitigation and S.P. responded that even if

11

Appellant had done "a lot of good things," he still needed to be punished for the crime that he committed. Defense counsel agreed that this response answered his question. The trial court then stated the basis of S.P.'s response to the scaled question. Defense counsel did not disagree with the trial court's explanation, but only expressed concern about what he perceived to be S.P.'s inability to understand English. The trial court explained that, in its view, S.P. was able to converse in English at the bench, that she had not responded negatively to the question about a juror's ability to read and write, and that even some people whose first language is English do not understand the meaning of the term "mitigation." Moreover, the trial court correctly noted that S.P.'s answer to the mitigation question was not a valid ground upon which to assert a challenge to her for cause.

After questioning S.P., Appellant never claimed that S.P. was unable to understand the jury's role; in fact, defense counsel agreed that her response answered his question about mitigation, and then he explicitly challenged her for cause based on that response. Importantly, the jury is not required to consider mitigating circumstances in non-death penalty cases. *See* CRIM. PROC. art. 37.071, § 2(d)(1) (West Supp. 2024); *Lamar v. State*, No. 04-13-00326-CR, 2014 WL 3747252, at *2 (Tex. App.—San Antonio July 30, 2014, no pet.) (mem. op., not designated for publication). Nor did the trial court's punishment charge include a mitigating circumstances instruction. And, although many other venire members provided responses of "strongly agree" or "agree" to defense counsel's mitigation question, none of those venire members were challenged for cause.

Appellant states in his brief that S.P.'s response provided "scant reassurance that she actually understood the jury's role in considering mitigating evidence in deciding how to punish an offender who had been found guilty." In evaluating the trial court's challenge-for-cause rulings, we defer to the trial court's determinations

because it is in the best position to evaluate a potential juror's demeanor and responses. *Hudson*, 620 S.W.3d at 731 (citing *Gardner*, 306 S.W.3d at 295–96).

We conclude that the record before us does not show that S.P. had a mental defect that rendered her incapable or unfit to serve on the jury. *See* CRIM. PROC. art. 35.16(a)(5). Therefore, the trial court did not abuse its discretion when it denied Appellant's challenge for cause against her. Accordingly, we overrule Appellant's sole issue.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


January 9, 2025

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.